**ARNOLD GRAPHICS INDUSTRIES, INC., Plaintiff-Appellee,**

v.

**INDEPENDENT AGENT CENTER, INC., Defendant,**

**and**

**Electronic Tabulating Corporation, Defendant-Appellant.**

No. 1186, Docket 85–7115.

United States Court of Appeals, Second Circuit.

Argued May 6, 1985.

Decided Oct. 4, 1985.

John Doar, New York City (David Wade, Michael S. Devorkin, New York City, on brief), for plaintiff-appellee.

Philip M. Gassel, New York City (Stuart M. Gerson, Epstein, Becker, Borsody & Green, New York City, on brief), for defendant-appellant.

Before MESKILL, KEARSE and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Electronic Tabulating Corporation ("ETC") appeals from a final judgment of the United States District Court for the Southern District of New York, Charles S. Haight, Jr., *Judge*, granting a motion by plaintiff Arnold Graphics Industries, Inc. ("Arnold"), pursuant to Fed.R. Civ.P. 25(c) to substitute ETC for defendant Independent Agent Center, Inc. ("IAC"), as defendant-judgment-debtor on a judgment won by Arnold against IAC in the United States District Court for the Northern District of Ohio (the "Ohio action"), and registered by Arnold in the district court for the Southern District of New York pursuant to 28 U.S.C. § 1963 (1982). Judge Haight ruled that substitution was appropriate because IAC had been *de facto* merged into ETC. On appeal, ETC contends principally that the court erred in concluding that there had been a *de facto* merger and in failing to rule that Arnold had waived its opportunity to establish such a merger during the Ohio action. We agree with the rulings of the district court and we affirm the judgment.

## I. BACKGROUND

In June 1979, Arnold, then a Pennsylvania corporation with its principal place of business in Ohio, commenced the Ohio action against ETC, a New York corporation whose principal place of business was in Newburgh, New York, and against IAC, ETC's wholly-owned subsidiary, which was incorporated in Texas and had once had its principal place of business in Texas but whose operations had by then been transferred to ETC's headquarters in Newburgh. Arnold sought to recover two debts totaling more than $73,000 allegedly owed Arnold by IAC.

In August 1979, ETC moved to dismiss Arnold's complaint against it for lack of personal jurisdiction, arguing that the parent-subsidiary relationship between it and IAC was insufficient to subject it to the court's jurisdiction. In support of its motion ETC submitted the affidavit of Aaron Ruscitti, an ETC vice president, stating that ETC did not do business in Ohio, that IAC had been acquired as an operating subsidiary, and that IAC "is a distinct corporate entity and exists as a corporate subsidiary of" ETC. After giving Arnold an opportunity to conduct discovery on the jurisdiction issue, District Judge William K. Thomas, to whom the case had been assigned, dismissed the complaint as to ETC for lack of personal jurisdiction. The dismissal was stated to be "without prejudice."

IAC appeared in the action and defended during the pretrial stages through July 1, 1981. At the pretrial conference held on that date, counsel for IAC stated that IAC was no longer doing business but that it was still a corporation in good standing. When the case was called for trial in November 1982, however, IAC defaulted. In colloquy with the court, counsel for Arnold

stated that he was prepared to proceed on the merits of the case against IAC but that he would prefer to reopen the case against ETC since Arnold now had some evidence that ETC had diluted the assets of IAC and that IAC had been an agent for ETC. The court suggested that Arnold proceed with the merits of its case against IAC and that Arnold might later pursue ETC if there were some basis for moving to vacate ETC's dismissal.

The court proceeded to take evidence on Arnold's claim against IAC and entered judgment against IAC for $180,332.86, including interest, plus costs and interest from the date of the judgment ("Ohio judgment").

In June 1984, the Ohio judgment was docketed in the Southern District, and Arnold moved for an order pursuant to Fed.R. Civ.P. 25(c) substituting ETC for IAC as defendant-judgment-debtor on the ground that there had been a *de facto* merger of IAC into ETC. Rule 25(c) provides, in pertinent part, that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom interest is transferred to be substituted in the action or joined with the original party."

The papers before the court on the Rule 25(c) motion included undisputed evidence that IAC's debts to Arnold had been incurred prior to December 12, 1977; that on December 12, 1977, ETC acquired 100% of the stock of IAC; that in 1978, ETC began to phase out IAC's Texas operation, and by August 31, 1978, only one employee remained at IAC in Texas; that an apparently contemporary ETC document describing the 1979 liquidation of ETC subsidiaries including IAC stated that "[o]n January 1, 1979 the assets and liabilities of Independent Agent Center, Inc. ... were transferred to the books of Electronic Tabulating Corporation"; that notes to the financial statements in ETC's 1979 annual report on Form 10–K to the Securities and Exchange Commission ("SEC") stated that "[a]s of January 1, 1979 the assets and liabilities [of

IAC] were merged into [ETC]"; that notes to the financial statements in ETC's Form 10–K reports to the SEC for 1980 and 1981 also stated that as of January 1, 1979, the assets and liabilities of IAC had been transferred to ETC; and that in March 1981, IAC's charter was forfeited by the Texas Secretary of State.

In a memorandum opinion and order dated January 22, 1985 ("Opinion"), the district court granted Arnold's motion. The district court rejected ETC's contention that the motion was an impermissible collateral attack on the Ohio court's decision to dismiss ETC for lack of personal jurisdiction, stating that "Judge Thomas was not asked to and did not adjudicate the question of *de facto* merger which is present[ed] by the present motion." Opinion at 14. As to the merits of the motion, it concluded that there had been a *de facto* merger:

> Where the evidence shows a purchase of the selling corporation's stock by the purchasing corporation; the acquisition of the selling corporation's assets and an acknowledgement that the purchasing corporation had also assumed the selling corporation's liabilities; the continuation of the selling corporation's business by the purchasing corporation; and the eventual dissolution of the selling corporation, a *de facto* merger has occurred which will render the purchasing corporation liable for just claims which third parties may have against the selling corporation.

*Id.* at 18. Accordingly, the court entered judgment substituting ETC for IAC as judgment debtor on the Ohio judgment.

## II. DISCUSSION

On appeal, ETC challenges the judgment entered below on the grounds that (1) Arnold should have been held collaterally barred from litigating in the Southern District whether a *de facto* merger had occurred between IAC and ETC, (2) the evidence presented was insufficient to support a conclusion that a *de facto* merger had occurred, and (3) the district court should

not have granted Arnold's motion without a trial as to whether ETC assumed the liabilities of IAC. We disagree and affirm the decision of the district court.

### A. *The Contention that Arnold is Barred from Asserting* De Facto *Merger*

■ ETC contends that Arnold was barred by principles of res judicata, collateral estoppel, or law of the case from asserting in the Southern District that there had been a *de facto* merger of IAC into ETC. The premise for its position is that since the Ohio court admittedly had jurisdiction over IAC, if there had been a *de facto* merger of IAC into ETC, the court would also have had jurisdiction over ETC; since the Ohio court dismissed the case against ETC for lack of jurisdiction, it must have determined that there had been no *de facto* merger. *See Fehl v. S.W.C. Corp.,* 433 F.Supp. 939 (D.Del.1977) (successor corporation not transacting business in state is subject to personal jurisdiction based on specific business transacted by its predecessor where *de facto* merger has occurred); *cf. I.A.M. National Pension Fund v. Wakefield Industries,* 699 F.2d 1254, 1258–59 (D.C.Cir.1983) (service on parent corporation reaches foreign subsidiary when two are not really separate entities). We reject ETC's arguments.

First, the dismissal of ETC for lack of personal jurisdiction has no res judicata effect because it was not a final judgment on that issue. *See* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[5] at 231–32 (2d ed. 1984) (dismissal for lack of jurisdiction "does not preclude a subsequent action where in the interim facts have occurred which now establish jurisdiction"). The fact that Arnold was given an opportunity in the Ohio action to conduct discovery in order to oppose ETC's motion and the fact that it did not come forward with evidence at that time to refute the basis for the motion did not mean that Arnold was thereafter barred on the question of the court's jurisdiction over ETC. The Ohio court entered its order dismissing ETC "without prejudice." Thus, Arnold remained free to renew its attempt to bring ETC into the Ohio action. Nor does the fact that upon the default of IAC Arnold suggested that it had evidence that might warrant bringing ETC into the case preclude Arnold's present reliance on *de facto* merger. The Ohio court left open the possibility that Arnold might reopen the matter, and the order dismissing ETC remained "without prejudice."

Nor is ETC aided by the doctrines of collateral estoppel or law of the case, for those doctrines do not bar the litigation of an issue unless that issue has already actually been litigated. *See* Restatement (Second) of Judgments § 27, comment *e* (1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4436, at 340–41 & n. 9 (1981) (collateral estoppel applicable only to issue determined in the ruling on the jurisdiction question); *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined."); *Pegues v. Morehouse Parish School Board,* 706 F.2d 735, 738 (5th Cir. 1983).

An examination of the record of the proceedings in the Ohio action reveals that the issue of *de facto* merger was not litigated. ETC's August 1979 motion to dismiss was based on the argument that its mere acquisition of IAC did not subject it to service in Ohio under the minimum contacts test of *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). ETC represented to the court that IAC was a distinct and still existent corporate entity; it did not reveal that ETC had, as of January 1, 1979, transferred all of IAC's assets and liabilities to itself. Arnold, not having been apprised of the latter fact, simply argued, in response to the motion to dismiss, that it might be entitled to "pierce the corporate veil." There was no suggestion by Arnold that there had been a *de facto* merger of IAC into ETC, undoubtedly because, "[t]o put it mildly, Ruscitti's affidavit to Judge Thomas [fell] somewhat short of full and candid disclosure." Opin-

ion at 8. Thus the question of *de facto* merger was not litigated, either in 1979 or later, and Arnold was not barred by principles of collateral estoppel or law of the case from asserting *de facto* merger in the Southern District as a basis for its Rule 25(c) motion.

B. *The Sufficiency of the Evidence Supporting the* De Facto *Merger Claim*

ETC claims next that the evidence was insufficient to support a finding of a *de facto* merger between it and IAC, which would entitle Arnold to look to ETC for repayment of IAC's debts. The district court held to the contrary, and we agree.

■■■ A *de facto* merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger. *Ladjevardian v. Laidlaw-Coggeshall, Inc.,* 431 F.Supp. 834, 838 (S.D.N.Y.1977). As the *Ladjevardian* court stated:

> [T]o find that a *de facto* merger has occurred there must be a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation, and the assumption of liabilities by the purchaser.

*Id.* at 839. Such a merger makes the surviving corporation liable for the claims against the predecessor corporation. *See Tucker v. Paxson Machine Co.,* 645 F.2d 620, 622 (8th Cir.1981); *cf.* N.Y.Bus. Corp.Law § 906(b)(3) (McKinney 1963); Ohio Rev.Code Ann. § 17.01.82(A)(4) (Baldwin 1979).

The case most similar to the present one is *Hoche Productions, S.A. v. Jayark Films Corp.,* 256 F.Supp. 291 (S.D.N.Y. 1966), in which a film distributor performed duties under a distribution contract with the plaintiff for about a year, whereupon its stock was purchased by Jayark Films Corp. ("Jayark"). Jayark immediately caused all of the distributor's assets to be transferred to it and proceeded itself to perform the distribution contract. Two years later, the distributor was dissolved. The plaintiff eventually sued Jayark for breach of contract, alleging that both Jayark and the original distributor had failed to pay plaintiff amounts due under the contract. Jayark contended that it could not be held liable for the breaches committed by the original distributor. The court disagreed, finding (1) that Jayark had purchased all of the stock of the original distributor, had taken assignment of all its assets, and had continued to conduct the business formerly conducted by the original distributor, and (2) that Jayark's officers had stated on several occasions that Jayark had assumed the original distributor's liabilities. Based on these findings, the court concluded that the transaction between the original distributor and Jayark constituted a *de facto* merger, making Jayark liable for the former's breaches of the contract.

We find no flaw in the *Hoche* court's reasoning, and we see no material difference between *Hoche* and the present case. Although in *Hoche,* the transfer of the original distributor's assets occurred immediately upon the defendant's purchase of its stock, while in this case, IAC operated as a subsidiary for about a year before its assets were transferred to ETC, this is not a significant distinction since there is no requirement that all of the events that are necessary to a finding of *de facto* merger occur at the same time. *See, e.g., Knapp v. North American Rockwell Corp.,* 506 F.2d 361, 367 (3d Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975), in which a *de facto* merger was found even though the selling corporation was not dissolved until eighteen months after the sale and possessed valuable assets during the interim.

Nor do we consider it a material difference that prior to ETC's acquisition of IAC, IAC was indebted to ETC, whereas there apparently was no such antecedent debt in *Hoche.* Whether or not, as ETC contends, mere cancellation of the IAC debt might have constituted adequate consideration for

ETC's acquisition of IAC's assets, the fact remains that ETC repeatedly stated that it had assumed IAC's liabilities as well.

We conclude that the evidence presented to the district court was sufficient to support the finding that a *de facto* merger had occurred.

## C. *The Requirement of a Trial*

Finally, ETC argues that it was error for the district court to grant Arnold's motion without holding a trial as to whether or not ETC had assumed IAC's liabilities. It contends that the court in effect granted Arnold summary judgment. Even within the summary judgment framework, we find no error here since we conclude that ETC's presentation in opposition to the motion was insufficient to compel the conclusion that its disputations of fact were genuine.

As indicated in Part I, ETC's statements that it had assumed IAC's liabilities and had merged IAC into ETC appear in ETC's own documents, many of which were filed with the SEC. To controvert these facts, ETC presented the affidavit of its president to the effect that ETC really had not intended to effect a merger or to assume IAC's liabilities. The Federal Rules of Civil Procedure do not permit so facile a presentation to defeat summary judgment. Fed.R. 56(e) requires that a party opposing summary judgment come forward with " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)). Assertions by a corporate officer simply that the corporation did not really mean the statements it had made repeatedly over the course of several years in reports required by the SEC do not, in our view, show a factual dispute that the district court is compelled to view as genuine. Given the presentations made to it, the district court here was not required to hold a trial.

We have considered all of ETC's other arguments on this appeal and find them without merit.

## CONCLUSION

The judgment of the district court is affirmed.