935 F.2d 267
 19 Fed.R.Serv.3d 1379
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GREATER POTATER HARBORPLACE, INCORPORATED, Greater Potater
Union Station, Incorporated, Greater Potater,
Incorporated, Potato World,
Incorporated, Parties in
Interest--Appellants,
and
David A. Brittingham, Thrasher's, Incorporated, Thrasher's
of Georgetown, Incorporated, Plaintiffs,
v.
Charles R. JENKINS, Synepuxent Pier and Improvement Company,
Time Incorporated, Ocean Fries Corporation,
Defendants-Appellees,
and
Resort Leisure Industries, Incorporated, Defendant.
 No. 90-1462.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided May 31, 1991.
As Amended June 21, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CA-82-3188-JH)
 Robert Alvin Gordon, Shapiro & Olander, Baltimore, Md., (Argued), for appellants; Joel I. Sher, Shapiro & Olander, Baltimore, Md., on brief.
 Raymond S. Smethurst, Jr., Adkins, Potts & Smethurst, Salisbury, Md. (Argued), for appellees; Robert B. Taylor, Barbara R. Trader, Adkins, Potts & Smethurst, Salisbury, Md., on brief.
 D.Md.
 AFFIRMED.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 The present appeal arises as a subsequent development in the case of Brittingham v. Jenkins, No. 89-1560 (4th Cir.1990). The controversies we now deal with are entitled Greater Potater v. Jenkins, No. 90-1462 (4th Cir.1990).
 
 
 2
 David A. Brittingham and Thrasher's, Inc.[1] sued Charles R. Jenkins and another (collectively referred to as Jenkins) for service mark infringements relating to misuse of the name "Thrasher's" for a company specializing in french fries. Jenkins counter-sued claiming that he in fact owned, and that Thrasher's, Inc. had infringed on, the "Thrasher's" mark. After a bench trial, the district court held that Thrasher's, Inc. had infringed Jenkins' mark and that Jenkins was entitled to recover damages despite Thrasher's defense of laches. (Assertedly, Jenkins had slept on the claim for fifteen years.) On August 14, 1989 and September 27, 1989, the district court awarded damages to Jenkins equalling 100% of lost profits, or $1,022,825.07, plus attorney's fees of $203,068. Upon motion of Jenkins, who thought, along with the court, that the order was a final one, the court granted judgment for Jenkins against Thrasher's, Inc. After inquiry by Thrasher's lawyers, the court discovered that not all issues were resolved by the August 14, 1989, order and that, arguably at least, there had been no final order in the case. As a result, the court entered an order expressly stating "final judgment" on October 20, 1989, which purported to dispose of the case by entering judgment for Jenkins on all his counterclaims and denying the Thrasher's group recovery on all its claims. The order did not explicitly mention damages nor did it make reference to the August 14, 1989 damages award.
 
 
 3
 Thrasher's brought an appeal of the damages award.[2] In an opinion handed down September 11, 1990 in Brittingham v. Jenkins, we held that, while Jenkins' right to recover was affirmed, Thrasher's defense of laches was, to a substantial extent, valid. Because of that holding, the award of damages was vacated and the case was remanded for recalculation of damages. While the remand greatly narrowed the scope of the time for which Jenkins could recover from fifteen years to the period after December, 1987, nevertheless Jenkins' entitlement to some damages was upheld. The September 11, 1990 opinion in Brittingham v. Jenkins was issued after initial briefs were filed in the present aspect of the case, Greater Potater, Inc. v. Jenkins, No. 90-1462, but before the reply brief was filed.
 
 
 4
 Greater Potater focuses on matters closely associated with Brittingham v. Jenkins. The appellants in Greater Potater (a collective name for several parties appellant, Greater Potater, Inc., Potato World, Inc., Greater Potater Union Station Inc., and Greater Potater Harborplace, Inc.) seek reversal of district court orders of March 30, 1990 and April 6, 1990 joining the Greater Potater group as additional counter-defendants answerable to the district court's judgment of October 20, 1989 in Brittingham v. Jenkins. Such adding of additional counter-defendants who have now appealed in the Greater Potater case took place while Brittingham v. Jenkins was already on appeal. Jenkins had filed the motion to join Greater Potater as counter-defendants, pursuant to Fed.Rule Civ.P. 25(c) (on a successor in interest theory), in an effort to enforce the $1,022,825.07 judgment. Jenkins was concerned that the owners of Thrasher's, Inc. were concealing its assets by transferring them to newly created sister corporations. Jenkins sought to enforce the judgment first by garnishing debt payments from Greater Potater, et al. to Thrasher's, Inc. The garnishments, which resulted in a January 25, 1990 order against the Greater Potater group, are challenged in the present appeal. Jenkins went on to add Greater Potater and the others personally as counterdefendants in Brittingham v. Jenkins on the theory that they were successors in interest to Thrasher's, Inc. That is also before us on appeal.
 
 I.
 
 5
 Greater Potater has argued that the September 11, 1990 decision vacating the amount of the award for recalculation in Brittingham v. Jenkins has made the judgment of October 20, 1989 for damages, as to which Greater Potater was added as a party, null and void.[3] Greater Potater has proceeded to contend that the January 25, 1990 garnishment judgments against Greater Potater, which sought payment to reduce the $1,022,825.07 judgment, are no longer valid on the grounds that there is no longer any money judgment against Greater Potater for the January 25, 1990 garnishee judgments to enforce. Therefore, it is argued, the March 30, 1990 order and April 6, 1990 order joining members of the Greater Potater group personally as counter-defendants also should be reversed since there is no longer a debt in existence on which Greater Potater could potentially be held liable.
 
 
 6
 At first blush, the argument has some appeal. In essence, it asks the question whether we should determine the appropriateness of a joinder of parties as counter-defendants to a judgment when there is no currently ascertained money judgment. Nevertheless, on reflection, the better course is for us to consider the merits of the appeal, since some judgment in Jenkins' favor has been affirmed on appeal. Only its exact amount or quantity has been rendered uncertain pending remand.
 
 
 7
 In short, the September 11, 1990 opinion in Brittingham v. Jenkins and lack of any exactness as to amount are not truly relevant. That is so because the question in Greater Potater is simply whether appellants were properly added as counter-defendants to a money judgment. That the Brittingham group will be liable for some damages is not in dispute. How much is the issue to be addressed. The exact amount remains an issue in Brittingham v. Jenkins. But it is not an issue in Greater Potater. The opinion merely determined the propriety of adding counter-defendants.
 
 
 8
 Although the recalculation in Brittingham v. Jenkins will reduce damages from $1,022,825.07 to a smaller amount, there was a damage award and there will yet be an award of some damages. Thus, it is appropriate to question whether the district court acted properly in adding defendants to that judgment, whatever amount may ultimately be determined to be due. Indeed, the conclusion that there was such a right, if otherwise appropriate, is unexceptional as frequently there exists a situation in which one of the parties has been joined after a trial establishing liability, but before the damages were entered. Fed.R.Civ.P. 25 "Substitution of Parties"; see Panther Pumps & Equip. Co. v. Hydrocraft, Inc., 566 F.2d 8, 23 (7th Cir.1977) (a subsequent proceeding to enforce judgment or injunction is "pending action" for Rule 25 purposes). Consequently, we deem it proper to proceed to the merits of the appeal.
 
 
 9
 There still may be the spectre of piecemeal appeals, which would continue to cloud the scene if Greater Potater had any reasonable basis to contest the joinder. However, on examination, we have concluded that no such reasonable basis to contest the joinder existed in fact.
 
 II.
 
 10
 The main thrust of Greater Potater's challenge is that joinder under Rule 25(c) was improper. Joinder was wrong, Greater Potater asserts, because (1) there was no final judgment; (2) the filing of the appeal divested the district court of jurisdiction, hence the court lacked subject matter jurisdiction over appellants; (3) due process requires that Greater Potater not be added without a trial by jury; and (4) Rule 25(c) did not apply since, on the merits, Greater Potater did not constitute a successor in interest to Thrasher's, Inc.
 
 A. Final judgment was entered
 
 11
 Appellants in Brittingham v. Jenkins trumpet a supposed lack of final judgment. They seek to make much of the fact that the August 14, 1989, order awarding damages was not a final order, because it did not dispose of all the claims in the case. They go on to assert that the October 20, 1989 order, while expressly declaring itself to be a "final order," did not mention damages.
 
 
 12
 Admittedly, although the August 14, 1989 order purported to be a final order, it may not have been under Fed.R.Civ.P. 54(b). In litigation involving multiple claims, judgment on one claim cannot become final until final disposition of all claims. Although Jenkins has made the argument that the claims were mutually exclusive, and thus award for Jenkins was, as to the counterclaims, defeat for Thrasher's, that argument is unconvincing since there was not perfect overlap in the claims and counterclaims. Knox v. United States Lines Co., 294 F.2d 354, 360 (3d Cir.1961) (existence of unresolved motion for new trial made judgment based on verdict not final and appealable). Nevertheless, the October 20, 1989 order, which disposed of all claims and expressly stated that it was a "final order," had the effect of making the earlier judgment final because the last-entered judgment renders all preceding judgments in the case final and appealable. See Fed.R.Civ.P. 54(b).
 
 
 13
 It may sometimes be helpful, though not essential, for the district court to restate all its judgments or orders in the final order. Yet here, the award of money judgments was clearly an integral part, a raison d'etre, for the disposition of the case. The judgment of October 20, 1989 that entered final judgment for Jenkins, though not specifically mentioning amount, included all prior judgments and, particularly, the orders of the court as to damages.
 
 
 14
 B. The district court retained authority to substitute parties
 
 
 15
 An effective notice of appeal divests a district court of jurisdiction to tamper with the judgment, but it does not divest the court of jurisdiction to enforce a judgment. See NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 588-89 (6th Cir.1987) ("Although a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment."); cf. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 378-79 (1985) (holding that pending appeal of criminal contempt order did not divest court of jurisdiction to enter order on dismissal of claim). Thus, a court can enforce a judgment but, while the appeal is pending, it can take no action that expands the judgment or otherwise alters it. Cincinnati Bronze, 829 F.2d at 588-89.
 
 
 16
 Greater Potater has contended that the March 30, 1990 district court order adding them as counter-defendants and the April 6, 1990 order holding them jointly and severally liable impermissibly expanded the judgment entered by the court.[4] The judgment was expanded to include them as liable parties jointly and severally, because such liability was not contemplated in the original judgment, yet pertinent to enforcement.
 
 
 17
 Jenkins has argued in response that determination of which court has jurisdiction to act during pendency of an appeal should follow common sense notions and not rigid formalities. The notion that the Supreme Court or this court should issue writs of garnishment is unpalatable. Yet, it is well established that under Rule 25(c) a court can substitute parties, even after judgment, where substitution of a party is necessary for enforcement of the judgment.[5] Panther Pumps & Equip. Co. v. Hydrocraft, Inc., 566 F.2d 8 (7th Cir.1977); Air Line Pilots Ass'n v. Texan Int'l Airlines, 567 F.Supp. 78, 81 (S.D.Tex.1983); see also 3B Moore's Federal Practice p 25.03, at 25-27 (2d ed. 1990). The district court had, after the October, 1989 judgment, investigated and found that Thrasher's, Inc. and its owners were siphoning off corporate assets into successor corporations to avoid the judgment, and so issued the April 6, 1990 order. Consequently, the district court properly took corrective steps, acting within its power to enforce the judgment by adding successors in interest to Thrasher's, Inc. The decision to add the parties, and the decision to issue writs of garnishment, were consistent with the ongoing responsibility of the district court to enforce its judgment.
 
 
 18
 C. Due process does not require a jury trial
 
 
 19
 The district court added Greater Potater pursuant to Jenkins' Fed.R.Civ.P. 25(c) motion without a trial. Greater Potater has contended that, on due process grounds, it was entitled to a jury trial to settle the numerous factual disputes over whether the Greater Potater group was in fact a successor to Thrasher's, Inc. Greater Potater, however, did not request a hearing in the district court, and, in such circumstances, a hearing is not required under Rule 78.
 
 
 20
 The Second Circuit has held that no trial is required on the issue of successor liability, and a Rule 25(c) motion could be granted on the papers before the court, when the response "was insufficient to compel the conclusion that its disputations of fact were genuine." Arnold Graphics Indus., Inc. v. Independent Agent Center, Inc., 775 F.2d 38, 43 (2d Cir.1985).
 
 
 21
 Jenkins has argued, with persuasive force, that, despite the protestations of Greater Potater, the facts are not in genuine dispute. Much, if not all, of the evidence relied on by Jenkins to refute the existence of a genuine dispute of fact came from the testimony of Thrasher's, Inc.'s owners and officers as well as corporate documents of the various newly created corporations. That on which Greater Potater has relied amounts to no more than naked assertions. Consequently, the district judge did not err in holding that there existed no genuine issue of material fact disputing successor status to be put to a jury. The district judge appropriately held that the challenges set forth by Greater Potater were not genuine, material or relevant.
 
 D. Appellants were successors in interest
 
 22
 Turning beyond procedural objections raised by Greater Potater, Greater Potater has also challenged on the merits the substance of the district court's holding that it, as successor in interest, could be added under Rule 25(c). Acknowledging that successor status may exist, Greater Potater has argued that Greater Potater does not fall within the confines of successor status since Greater Potater, though now in possession of most of the assets of Thrasher's, Inc., received the assets through an arm's-length transaction. It is further contended that Greater Potater cannot be successor in interest because the original entity, Thrasher's, Inc., still exists--even though it is just a shell.
 
 
 23
 First, however, the general principle that a corporation that acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation has several recognized exceptions. Under Baltimore Luggage Co. v. Holtzman, 80 Md.App. 282, 290, 562 A.2d 1286, 1289-90 (1989), liability will be imposed on successor corporations when, inter alia, the transaction amounts to a de facto merger, and the purchasing corporation is a mere continuation of the selling corporation.
 
 
 24
 The Baltimore Luggage court set forth various "indicia of continuation" that a court should look to in determining whether a transaction meets the mere continuation exception to the general rule. The court pointed to "common officers, directors and shareholders" and considered pertinent that there was "only one corporation in existence after the completion of the sale." Moreover, as the court observed, "neither is essential" and other factors, such as continuation of the seller's business practices by the purchasing corporation, are relevant.
 
 
 25
 In the present case, after the district court held in December, 1987 that Brittingham infringed on Jenkins' mark, the Brittingham group, which then owned Thrasher's, Inc., entered a complex web of corporate transactions that resulted in the sale of nearly all of Thrasher's, Inc.'s assets to Greater Potater and related corporations. Unrebutted evidence showed the continuing relation between Thrasher's, Inc. and Greater Potater. The owners, officers, and managers of Thrasher's, Inc. became the owners, officers, and managers of Greater Potater and related corporations. The office space for the newly created Greater Potater corporations was leased from Thrasher's, Inc. The money to incorporate Greater Potater was provided by Thrasher's, Inc. Greater Potater put up little money to "buy" the assets of Thrasher's, Inc.; instead, Greater Potater ended up owing a large debt to Thrasher's, Inc. Thrasher's, Inc., at this point, has little if any assets and is largely a vehicle to collect the debt payments from Greater Potater, et al. as they mature. But the business formerly conducted by Thrasher's, Inc.--the selling of french fries--has continued to operate, albeit in expanded form, using the same equipment, many of the same practices, and under the same management as Thrasher's, Inc. Consequently, the district court was not in error when it held Greater Potater was a mere continuation of, and thus a successor in interest to, Thrasher's, Inc. The holding is all the more compelling when one considers the strategic timing of the corporate machinations that created the Greater Potater group to replace Thrasher's, Inc. on the eve of the liability's reduction to damages.
 
 
 26
 Greater Potater has attempted to put great stress on the fact that Thrasher's, Inc. still exists, which is supposed to defeat a conclusion that there has been a mere continuation. The argument amounts to the somewhat illogical claim that there cannot be mere continuation where the selling corporation continues to exist. When one follows, it is in no way unusual for one to follow someone still in existence and occupying a position on the path ahead. The Second Circuit has provided a useful formulation: "A de facto merger occurs when one corporation is absorbed by another, but without compliance with the statutory requirements for a merger." Arnold Graphics Indus., Inc. v. Independent Agent Centers, Inc., 775 F.2d 38, 42 (2d Cir.1985). There should be liability imposed even when the predecessor corporation has not been terminated, since one should not be able to escape liability with such a convenient artifice. Id.
 
 
 27
 There is simply no sufficient counter-evidence to call into dispute the court's conclusion that the transfer of assets from Thrasher's, Inc. to Greater Potater amounted to a merger. Greater Potater has the same assets, employees, and management as Thrasher's, Inc. See Lumbard v. Maglia, 621 F.Supp. 1529, 1535 (S.D.N.Y.1985) (identifying "same employees, assets, and management" as critical indicators; and looking to see whether the transaction reduced the predecessor to a "shell"). As the results of a de facto merger with Thrasher's, Inc., Greater Potater was undoubtedly a successor to Thrasher's.
 
 III.
 
 28
 Finally, it has been asserted that the district court erred when it entered the January 25, 1990 garnishment judgment against Greater Potater personally as to its debt payments due to Thrasher's, Inc.[6] Also, Greater Potater has reiterated that there was no final order awarding money damages, and Maryland rules only permit garnishment of property to satisfy a "money judgment."[7]
 
 
 29
 The assignment of error is more substantial as to the garnishment aspect of matters, yet on examination it is rendered of little effect because of the in personam characteristics pertaining to Greater Potater as a successor. Greater Potater has contended that the judgments stemming from the garnishment proceedings are in personam judgments against Greater Potater, and not in rem as required by Maryland rule. Maryland Rule 2-645(j) provides:
 
 
 30
 A judgment against the garnishee shall be limited to the value of the property of the judgment debtor established by the judgment creditor to be in the hands of the garnishee but not to exceed the amount owed under the creditor's judgment....
 
 
 31
 The entry of an in personam judgment has enabled Jenkins, as judgment creditor, to reach any property of Greater Potater, going far beyond the debtor's matured obligations in the hands of the garnishees. Jenkins was not, in garnishment, entitled to an in personam judgment. According to Greater Potater, Jenkins can properly collect in garnishment only in rem.
 
 
 32
 While that represents an accurate statement of garnishment law, it has little or no consequence here. Wiping out of a garnishment action in rem still leaves outstanding Greater Potater's in personam responsibility as successor to Thrasher's, Inc. Since there have been no antecedent garnishments in others, the issue is moot.
 
 
 33
 Accordingly, while the garnishments should be vacated, the judgment of the district court is otherwise
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Actually, Brittingham personally has dropped out early and there are many people and entities he stands for. For simplicity sake, the "Brittingham group," which now controls Thrasher's, Inc. and which lost at trial, will be referred to as Thrasher's
 
 
 [2]
 It appealed both the August 14, 1989 order and the October 20, 1989 order. We consolidated them on appeal. The consolidated appeal was docketed in September and November, 1989, and oral argument was heard July 16, 1990
 
 
 [3]
 While on September 11, 1990 we ordered the October 20, 1989 judgment modified as to damages, we otherwise affirmed
 
 
 [4]
 Greater Potater has also contended that the March 30, 1990 order did not provide for the entry of a money judgment and that the April 6, 1990 order, by entering a money judgment against them, went beyond Jenkins' motion to add them as parties. Consequently, the Greater Potater group has phrased the argument in a manner to assert that the district court engaged in an "extraordinary abuse of discretion."
 The argument ignores reality. The only reason for a party to be added to a case that has gone to a money judgment is to make it collectible if the party added had, as a result of proceedings in the case, already been adequately determined to be liable. The plain purpose of the joinder was the enforcement of the judgment against the Greater Potater entourage as successors in interest. Such status was determined to exist by the district judge. The motion itself patently sought to "join as additional judgment defendants" Greater Potater. It clearly knew of the plain purpose, since Greater Potater's memorandum to the district court opposing the motion clearly recognized that the motion would "enter judgment against them." That successor in interest status attached was also abundantly clear, as we shall hereafter demonstrate.
 
 
 [5]
 Jenkins had to satisfy the requirement that the judgment was "pending" in the district court. According to Moore's Federal Practice, "Rule 25 has application only to actions pending in the district courts." 3B J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 25.03. The treatise then adds: "But this should not preclude substitution after judgment has been rendered in the district court...." Id. The next question is whether substitution is precluded while the case is on appeal. Substitution, or adding of parties, is not here sought as part of the appeal, which can only be accomplished pursuant to Fed.R.App.P. 43. Instead, substitution has been sought solely for enforcement of judgment. The "pending" question was resolved by resort to the theory already advanced that a court retains jurisdiction over enforcement of a judgment even when the judgment is on appeal. The matter, to the limited extent of enforcing judgment, is still "pending" in district court
 
 
 [6]
 To clarify the position of Greater Potater, we should explain that Greater Potater wears two hats. Initially, Jenkins went after Greater Potater by garnishment writs because of periodic debts owed to Thrasher's, Inc. However, as soon as Jenkins realized that the debt obligations were not maturing frequently and that the relation between Greater Potater and Thrasher's, Inc. was much closer than first imagined, Jenkins put on Greater Potater a second hat. At that time, Jenkins moved to add Greater Potater personally as counter-defendants to the Brittingham judgment
 
 
 [7]
 "Money judgment" is defined as "a judgment determining that a specified amount of money is immediately payable to the judgment creditor. It does not include a judgment mandating the payment of money." Maryland Rule 1-202(o). So it would appear impossible to order anything on remand in any garnishment proceeding of Jenkins against Greater Potater, since the amount of money will be unspecified