**MATOSANTOS COMMERCIAL CORPORATION, Plaintiff,**

**v.**

**APPLEBEE'S INTERNATIONAL, INC., Defendant/Third Party Plaintiff,**

**v.**

**Apple Development Associates, II, L.P., Peter W. Feldman and Henry Derooy, Third Party Defendants.**

**No. Civ.A. 99–2105–KHV.**

United States District Court, D. Kansas, Kansas City Division.

Nov. 15, 1999.

Bruce Keplinger, Timothy S. Davidson, Norris & Keplinger, L.L.C., Overland Park, KS, Hector Saldana-Egozcue, Saldana & Vallecillo, PSC, Brian D. Martin, Blackwell, Sanders, Peper & Martin, LLP, Kansas City, MO, for Matossantos Commercial Corp.

Peter Feldman, Deerfield Beach, FL, pro se.

Michael Thompson, Brian D. Martin, Blackwell, Sanders, Peper & Martin, LLP, Kansas City, MO, for Applebee's Intern., Inc.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

On August 26, 1999, the Court sustained a motion for summary judgment by Applebee's International, Inc. ("Applebee's"). *See Memorandum & Order* (Doc. # 64). The Court found that issue preclusion bars the present claims of Matosantos Commercial Corporation ("Matosantos"), because the claims in this case revolve around an issue which the parties have previously litigated in Puerto Rico. *Id.* This matter comes before the Court on *Plaintiff's Motion And Memorandum For Reconsideration Of The Court's Order Granting Summary Judgment To Defendant Against Plaintiff* (Doc. # 74) filed September 7, 1999. In addition to repeating many prior arguments, Matosantos argues that the Court misinterpreted its complaint in this case, in that the complaint raises issues which Matosantos has not previously litigated.

### Facts[1]

On April 13, 1995, Matosantos entered into a Purchase and Delivery Agreement (the "purchase agreement") with Casual Dining Restaurant Management of Puerto Rico, Inc. ("Casual Dining"). Casual Dining was an affiliate of Apple Development Associates II ("Apple Development"), a franchisee of Applebee's International, Inc. ("Applebee's"). In the purchase agreement, Casual Dining agreed to pay for any inventory which Matosantos purchased to service the Casual Dining account.

On February 13, 1996, Applebee's and Apple Development executed a management agreement which authorized Applebee's or one of its subsidiaries to manage the Casual Dining restaurants until March 8, 1996. The agreement stated that for the duration of the management term, Applebee's or one of its subsidiaries would operate the restaurants subject to existing contracts of Casual Dining.

On February 14, 1996, Gilbert Simon, Applebee's executive director of international financing, sent Matosantos a letter which stated that as of that date, an Applebee's subsidiary had begun to manage the Casual Dining restaurants. Simon stated that Applebee's would pay for goods and services delivered on or after that date. Matosantos alleges, however, that prior to February 14, 1996, Simon *orally* promised that any subsequent franchisee would assume the obligations contained in the Casual Dining purchase agreement. *See Complaint* (Doc. # 1) at 3–4.

### Analysis

▮ The Court has discretion whether to grant or deny a motion to reconsider. *See Hancock v. City of Okla. City,* 857 F.2d 1394, 1395 (10th Cir.1988). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. *See Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981); *Burnett v. Western Resources, Inc.,* 929 F.Supp. 1349, 1360 (D.Kan.1996). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed. *See Voelkel v. General Motors Corp.,* 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd,* 43 F.3d 1484 (10th Cir.1994). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

▮ The Court rejects most of the Matosantos arguments because they are the very arguments which the Court rejected in its prior order. Matosantos repeats its argument that Rule 41(b), Fed.R.Civ.P., prevents

---

1. The Court has previously set out the relevant facts in this case. *See Matosantos Commercial Corp. v. Applebee's Intern., Inc.,* 64 F.Supp.2d 1105 (D.Kan.1999). For purposes of this motion, the Court briefly summarizes its prior discussion.

issue preclusion from applying to a dismissal for lack of jurisdiction. Matosantos asks the Court to "carefully review the exact language of Rule 41(b) to find any mention of a differentiation in the phrase adjudication upon the merits between issue preclusion and claim preclusion." *See Plaintiff's Motion And Memorandum For Reconsideration Of The Court's Order Granting Summary Judgment To Defendant Against Plaintiff* (Doc. # 74) filed September 9, 1999 at 5. Plaintiff's reading of Rule 41(b) is correct—the rule does not distinguish between claim preclusion and issue preclusion—but this simple fact is not dispositive. Rule 41(b) does not need to distinguish claim preclusion and issue preclusion because it concerns dismissal of *claims* rather than *issues.* Rule 41(b) states that when a claim is dismissed for lack of jurisdiction, the claim is not adjudicated on the merits. It does not suggest that when a claim is dismissed for lack of jurisdiction, issues which are litigated to determine the jurisdictional question are not fully adjudicated on the merits. As the Court noted in its previous order, the Matosantos argument goes against the clear weight of authorities which hold that issues litigated in determining a jurisdictional question have issue preclusion effect. *See Memorandum & Order* (Doc. # 64) at 7 (citing 18 Wright & Miller, *Federal Practice & Procedure Jurisdiction* § 4436 at 340; *Kasap v. Folger Nolan Fleming & Douglas, Inc.,* 166 F.3d 1243, 1248 (D.C.Cir.1999); *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 396 n. 10 (5th Cir.1998)).

Matosantos argues that by not applying the language of Rule 41(b), the Court "skirt[ed] the issue" whether the previous litigation served as an adjudication on the merits. *See Plaintiff's Motion And Memorandum For Reconsideration Of The Court's Order Granting Summary Judgment To Defendant Against Plaintiff* (Doc. # 74) at 6. The Court again disagrees. The Court's order clearly states that issue preclusion requires an adjudication on the merits. *See Memorandum & Order* (Doc. # 64) at 6. After reviewing the case law, the Court determined that issues decided as part of a dismissal for lack of jurisdiction are fully adjudicated on the merits. *See id.* at 6–7

(citing *Res judicata effect of judgment dismissing action, or otherwise denying relief, for lack of jurisdiction or venue,* 49 A.L.R.2d 1036, 1068; *Unity House, Inc. v. First Commercial Fin. Group, Inc.,* 175 F.3d 1022 (7th Cir. Mar. 17, 1999) (Table, Text available on Westlaw at 1999 WL 164924 at *2); *McCarthy v. Utah,* 1 Utah 2d 205, 265 P.2d 387, 389 (1953); *Shore v. Shore* 43 Cal.2d 677, 277 P.2d 4, 6 (1954); *Long v. Daylor,* 327 Pa. 484, 194 A. 495, 497 (1937)).

Matosantos again argues that it did not have a full and fair opportunity to litigate its case in Puerto Rico. Only one issue in this regard is arguably new that the Puerto Rico district court limited discovery which Matosantos sought regarding the jurisdiction issue. *See Plaintiff's Motion And Memorandum For Reconsideration Of The Court's Order Granting Summary Judgment To Defendant Against Plaintiff* (Doc. # 74) at 9. Matosantos states that "[t]he [Puerto Rico district] court mistakenly stated ... that Matosantos requested jurisdictional discovery after the Magistrate Judge issued the report and recommendation and therefore denied the request." *See id.* Matosantos, however, materially misstates the Puerto Rico court's action. As the Court previously noted, the Puerto Rico district court denied the discovery request because the requested discovery did not pertain to the contract issue. *See Memorandum & Order* (Doc. # 64) at 9 n. 6 (citing *Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27), Ex. C at 14). Matosantos does not contend that the Puerto Rico district court limited discovery of the contract issue, and the Court therefore believes that its prior analysis was correct.

Matosantos raises no other new issue regarding a full and fair opportunity to litigate, and the Court stands by its prior discussion in rejecting the arguments by Matosantos. *See Memorandum & Order* (Doc. # 64) at 9–10. Repetition of arguments does not persuade the Court that issue preclusion requires a meritorious fact-finding process, *see id.* at 12–13; that issue preclusion was not foreseeable, *see id.* at 11; that the Puerto Rico decision was not based on ultimate facts, *see id.* at 11–12; or that the Puerto

Rico district court misinterpreted the claims which Matosantos made there.[2] *See id.* at 13–14.

In its motion for reconsideration, Matosantos for the first time cites a case which holds that an issue decided for jurisdictional purposes does not allow issue preclusion on the merits of plaintiff's claims. *See Four Star Capital Corp. v. Nynex Corp.*, 1993 WL 350016 (S.D.N.Y. Sept. 9, 1993). The Court previously recognized the holding in this case but reached the opposite conclusion based on the weight of authority. *See Memorandum & Order* (Doc. # 64) at 11. As is obvious from the prior order, the Court disagrees with the analysis in *Four Star*. Specifically, the *Four Star* court did not mention any cases which disagreed with its position nor did it conduct any detailed analysis of the issue. It simply relied on *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*, 775 F.2d 38, 41 (2d Cir.1985), finding that *Arnold* "appears to support this Court's conclusion." *Four Star*, 1993 WL 350016 at *2.

This Court disagrees with the *Four Star* characterization of *Arnold*. In *Arnold*, the Second Circuit correctly held that a dismissal for lack of personal jurisdiction had no res judicata or claim preclusive effect. *See Arnold*, 775 F.2d at 41. The Second Circuit also held that the dismissal had no collateral estoppel or issue preclusive effect because the precise issue which defendant sought to preclude had not been raised in the previous litigation. *See id.* The Second Circuit did not generally hold that issue preclusion does not apply to issues which are litigated on a motion to dismiss for lack of personal jurisdiction.

Because *Arnold* does not support the holding in *Four Star*, the persuasive authority of *Four Star* is questionable. The Court's decision to apply issue preclusion here does not disagree in any way with the Second Circuit analysis in *Arnold* and the Court is not persuaded that *Four Star* justifies reconsideration in this case.

■ Last, Matosantos argues that the Court has misinterpreted the complaint in this case. The Court found that the claims all revolved around the single issue whether Applebee's assumed or represented that it would assume the contractual obligations of Casual Dining under its purchase agreement with Matosantos. *See Memorandum & Order* (Doc. # 64) at 14. Matosantos argues that its complaint was not limited to this theory and that it also alleges that Applebee's entered separate contracts with Matosantos. Matosantos argues that the Puerto Rico courts did not litigate this issue and that issue preclusion is therefore inappropriate.

Matosantos argues that its suit involves six different claims: (1) breach of contract based on a letter from Gilbert Simon to Matosantos dated February 14, 1996; (2) breach of an oral agreement between Applebee's and Matosantos that Applebee's would perform the obligations set forth in the management agreement (not an agreement to assume the responsibility of the purchase agreement); (3) breach of the management agreement, of which Matosantos alleges it was a third-party beneficiary;[3] (4) breach of a contract by estoppel, based upon representations by Applebee's to Matosantos that Applebee's would honor its obligations under the management agreement (not that it would assume respon-

---

**2.** The Court notes two respects in which the Puerto Rico district court allegedly misinterpreted the Matosantos claims. First, Matosantos argues that though the magistrate judge correctly interpreted the claims, his interpretation is irrelevant. As noted in the prior memorandum and order, the Puerto Rico district court considered the Matosantos objections to the magistrate's report and recommendation and .specifically adopted the magistrate's ruling. *See Memorandum & Order* (Doc. # 64) at 13. The district court only modified the report and recommendation to the extent that the district court found that Applebee's had contacts with Puerto Rico. *See Exhibits To Defendant Applebee's Motion For*

*Summary Judgment* (Doc. # 27), Ex. C at 7 n. 4. The magistrate judge's report and recommendation is otherwise binding upon the parties. *See* Fed.R.Civ.P. 72; 28 U.S.C. § 636. Second, the Court previously noted that Matosantos should have either appealed or sought reconsideration of any misinterpretation by the district court. *See Memorandum & Order* (Doc. # 64) at 14. Matosantos implies that it could not do either, yet it provides no reason why it could not. The Court therefore stands by its previous discussion.

**3.** Matosantos does not argue, however, that the Court misconstrued its third claim.

sibility for the purchase agreement); (5) intentional misrepresentations based upon this same conduct; and (6) negligent misrepresentations regarding the same conduct.

The Court sees no meaningful difference between the allegedly new claims and the claims as the Court previously understood them. All of the "new" claims involve representations that Applebee's would be responsible for inventory provided pursuant to the purchase agreement between Casual Dining and Matosantos. None of the new claims allege representations or contracts that are independent of the purchase agreement. Every claim either states or implies that Applebee's duty to pay arises from the purchase agreement, because Matosantos alleges that Applebee's had the same duty which Casual Dining had under that agreement. For example, Matosantos now alleges that its second, fifth and sixth claims regard statements by Applebee's to Matosantos that Applebee's would honor its obligations under its management agreement with Apple Development. *See Plaintiff's Motion And Memorandum For Reconsideration Of The Court's Order Granting Summary Judgment To Defendant Against Plaintiff* (Doc. # 74) at 3–4. The Court sees no material difference between this allegation and an allegation that Applebee's agreed to assume the obligations of the Casual Dining purchase agreement. The management agreement only made Applebee's liable for the Matosantos inventory because it required Applebee's to assume the obligations under the purchase agreement. Matosantos does not allege that the management agreement, standing alone, imposed any such obligations on Applebee's.

Indeed, Matosantos states just the opposite. In its third claim, Matosantos alleges that Applebee's is liable under the management agreement because it "expressly agreed to operate the restaurants subject to the contracts entered into by Apple Development Associates II and its affiliates" and "agreed to be responsible for the payment of any charges due under said contracts."[4] *See*

*Complaint* (Doc. # 1) at 7. In other words, in its most specific claim regarding the management agreement, Matosantos alleges that the agreement required Applebee's to operate under the existing purchase agreement and also required that Applebee's pay for the inventory which Casual Dining had previously agreed to purchase. To say that based on these facts, Applebee's was not assuming the Casual Dining obligation to pay for the inventory, but rather formed its own contract to pay for the same inventory is a play on words. Both phrases mean the same thing in this case because the management agreement does no more than tie Applebee's to the purchase agreement. The Court finds that this distinction is without a difference and that issue preclusion therefore still applies.

In addition, as Applebee's notes, this new argument is curious because it appears to run counter to the way Applebee's and the Court read the complaint and the way the parties briefed the summary judgment motion by Matosantos. In the complaint, Matosantos seeks limited relief for inventory it could not sell after Applebee's closed its restaurants in Puerto Rico. The complaint sets out the language of the purchase agreement between Matosantos and Casual Dining, which required Casual Dining to pay for inventory which Matosantos held. Matosantos then alleges that Applebee's and Apple Development entered into a management agreement which required Applebee's to pay charges due under the previous contracts for "services rendered or supplies or equipment used" after Applebee's took over the restaurants. *See Complaint* (Doc. # 1) at 3. Matosantos then alleges that before Applebee's executed the management agreement, Simon told Matosantos "that Applebee's International required any new franchisee to assume the previous obligations as part of the new purchase agreement." *See id.* at 3–4. Matosantos further alleges that "[o]n February 14, 1996, Applebee's [through Simon] sent a facsimile transmission to Matosantos … promising to pay for all goods and services

---

4. As noted in the Court's prior memorandum and order, the Puerto Rico courts found otherwise, holding that the management agreement did not make Applebee's liable for any contracts entered into by Apple Development or Casual Dining or any charges due under these contracts. *See Memorandum & Order* (Doc. # 64) at 4. On reconsideration, Matosantos apparently concedes that issue preclusion bars its claim under the management agreement.

delivered on or after February 14, 1996." *Id.* at 4. Matosantos then alleges that when the restaurants closed, "as per instructions from Applebee's and as provided for in the Purchase and Delivery Agreement, Matosantos delivered all of the products of the existing inventory to a third party." *Id.*

One cannot reasonably read the complaint in a way that supports the claims of Matosantos. For example, Matosantos now argues that Simon told Matosantos that Applebee's would honor the management agreement between Applebee's and Apple Development. This argument strains the language of the complaint in an unreasonable manner. The complaint actually alleges that Simon promised that as part of the management agreement between Applebee's and Apple Development, an Applebee's franchisee would assume the duties of Casual Dining in its purchase agreement with Matosantos as part of the management agreement. *See Complaint* (Doc. # 1) at 3–4. The complaint does not allege that Simon promised that *Applebee's* would honor its contractual obligations to Apple Development. In addition, the complaint specifically states that Matosantos disposed of the inventory under the terms of its purchase agreement with Casual Dining; not under the terms of any other contract.

The briefing of Applebee's motion for summary judgment further suggests that Matosantos did not interpret its complaint as alleging issues different than it litigated in Puerto Rico. As the most obvious example, Matosantos stated that "the claim in this case is for the cost of the goods delivered to a third party in March, 1996, pursuant to paragraph 8 of the Purchase and Delivery Agreement" between Casual Dining and Matosantos. *See Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 43) at 5. Matosantos did not claim that Applebee's was liable under any other contracts. The Court reasonably assumed that Matosantos premised its theory of liability on the fact that Applebee's assumed the obligations of Casual Dining under the purchase and delivery agreement.

If Matosantos intended to advance the claims it now argues, it could have noted this fact in responding to Applebee's motion for summary judgment. Instead, for example, in its statement of facts, Applebee's alleged that:

[t]he February 14 letter stated that the former operator (Casual Dining) was responsible for payment of goods and services provided to the restaurants prior to February 14 under the Purchase and Delivery Agreement between Casual Dining and plaintiff.

*Memorandum In Support Of Defendant's Motion For Summary Judgment Pursuant to Fed.R.Civ.P. 56* (Doc. # 26) at 3. Matosantos did not allege—as it now does—that the letter of February 14 constituted a wholly separate contract between Matosantos and Applebee's. Matosantos only responded by alleging that Simon had "previously orally promised to Manuel Matosantos, Jr., that any subsequent franchisee would assume the obligations of the prior franchisee." *See Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 43) at 6.

In sum, the Court is not convinced that Matosantos interpreted its complaint as alleging different contracts than it presented in the Puerto Rico litigation. Even if it did, Matosantos did not point out these differences in responding to Applebee's motion for summary judgment. Instead, Matosantos argued that the issues adjudicated in Puerto Rico were different than those in this case because Matosantos brought additional claims, *see* (Doc. # 43) at 19, and because the Puerto Rico court interpreted the claim as seeking different relief from what Matosantos seeks in this case. *See* (Doc. # 63) at 4. Matosantos did not contend, as it now does, that its claims involved representations or contracts which were wholly different from those resolved in the Puerto Rico litigation. Matosantos fails to show that it could not raise its current argument in its briefing of the summary judgment motion, and reconsideration based on this argument is therefore inappropriate. *See Van Skiver,* 952 F.2d at 1243 (motion to reconsider not appropriate if movant could have raised argument originally).

Even if the Court reads the complaint to allege that Applebee's formed its own con-

tracts with Matosantos to pay for the inventory, or represented that it would do so, this reading would not warrant reconsideration. The existence of new theories of recovery is not enough to prevent issue preclusion this case because they do not present new issues. In this case, the theories are merely a new spin on the exact same evidence and facts, in an attempt to prove the matter which Matosantos failed to prove in Puerto Rico: an agreement or representation by Applebee's to pay for the Matosantos inventory. At worst, the Court construed too narrowly the issue which Matosantos litigated in Puerto Rico. *Any* agreement regarding the inventory could provide sufficient contacts between Applebee's and Puerto Rico so that Puerto Rico might exercise personal jurisdiction over Applebee's, regardless of whether Applebee's formed its own contract or assumed the contract of Casual Dining. *See Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27), Ex. C at 9. In Puerto Rico, Applebee's argued that "it has no commercial relationship with plaintiff that might have generated plaintiff's cause of action." *Id.*, Ex. D at 10. Both the magistrate and the district court agreed with Applebee's.

In this case, Matosantos seeks the same relief, based upon the same facts and evidence as in the Puerto Rico action. *See Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27), Ex. A; *Complaint* (Doc. # 1) at 5. In Puerto Rico, Matosantos alleged the same oral representation by Simon. *See id.* The magistrate disposed of any oral contract issue; rejecting "[p]laintiff's unilateral and unsupported claim that it had a verbal contract with Applebee's International." *See Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27), Ex. D at 23. Likewise, the district court found that "[p]laintiff's allegations of 'verbal representations' [were] insufficient." *Id.*, Ex. C at 11. In Puerto Rico, the parties also provided the letters from Simon to Matosantos and argued that Applebee's had agreed or represented that it would pay for the inventory. *See Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27), Ex. F, ex. 2, 3, 4. Both of the Puerto Rico courts concluded

that these letters did not show a commercial relationship; indeed, the courts found that they showed exactly the opposite. *See Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27) Ex. C at 11; Ex. D at 4.

While Matosantos arguably raises theories that the Puerto Rico Courts did not consider, issue preclusion still applies. The complete overlap between the evidence, facts, and relief sought in both cases weighs heavily in favor of issue preclusion here. *See Restatement 2d of Judgments,* § 27, cmt. c (listing factors to determine what issue was previously litigated). The new theories remain focused on whether Applebee's agreed or represented that it would pay for the inventory in question. Matosantos litigated this issue in Puerto Rico.

> [I]ssue preclusion is not limited rigidly to the precise details of the first actual litigation. Within some sphere, issue preclusion properly operates outside such bounds to prevent litigation of matters that never have been considered in prior litigation. . . . Broad definition of the issue precluded is most appropriate as to efforts to advance new arguments as to facts that had been fixed by the time of the first litigation. In such circumstances, there is apt to be relatively strong justification for concluding that the facts should have been advanced in the first action, and for that very reason litigants are apt to generate instinctive interests of repose and reliance around the first result.

Wright & Miller, *Federal Practice & Procedure,* § 4417 at 157–58; *see also Restatement 2d of Judgments* § 27, cmt. c. No new facts were tendered in this case which did not exist and were not available for production in the former case. The applicable and controlling facts remain the same. *See Gillespie v. Commissioner of Internal Revenue,* 151 F.2d 903, 906–07 (10th Cir.1945). Issue preclusion bars the present claims which seek the same relief and are based on exactly the same evidence and facts as the parties presented in Puerto Rico. *See Tait v. Western Md. Ry.,* 289 U.S. 620, 626, 53 S.Ct. 706, 77 L.Ed. 1405 (1933) ("The very right now contested arising

out of the same facts appearing in this record, was adjudged in the prior proceeding").[5]

In addition, even if the Court looked at the merits of the contracts and representations which Matosantos now alleges, Applebee's is still entitled to summary judgment on these claims because none of the statements or letters make Applebee's liable for the inventory in question. Regarding any oral representation to honor the management agreement, the evidence shows that Simon told Matosantos that Applebee's International "required any new franchisee to assume the previous obligations of the prior franchisee as part of taking over the franchise." *Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 43), Ex. 1 at 2. This statement does not support an inference that Applebee's would honor the management agreement. Further, the statement does not suggest that Applebee's contracted with Matosantos to assume liability for the inventory. Applebee's is therefore entitled to summary judgment to the extent that the claims rely on oral contracts and representations.

Similarly, Simon's letter of February 14, 1996 does not constitute a contract by Applebee's to pay for the inventory. The same is true for his letters combined. The letter of February 14, 1996 states only that "[i]nvoices or other billings for goods and services delivered on or after February 14, 1996 will be paid by us in accordance with the current terms." *Exhibits To Defendant Applebee's Motion For Summary Judgment* (Doc. # 27), Ex. F, ex. 2. Even construing this letter as a contract, it does not direct Matosantos to hold inventory for Applebee's or state that Applebee's will pay for inventory held by Matosantos under the Casual Dining purchase agreement. It states only that Applebee's will pay for goods and services *deliv-*

ered by Matosantos. Likewise, the parties cite letters from Simon to Matosantos dated February 15 and February 23, 1996. Neither letter discusses any agreement or representation that Matosantos should hold inventory for Applebee's or that Applebee's would be liable for any inventory which was not shipped to the restaurants in Puerto Rico. *See id.*, Ex. F, ex. 3, 5. Applebee's is therefore entitled to summary judgment on the claims of written contracts or representations by Simon to Matosantos.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion And Memorandum For Reconsideration Of The Court's Order Granting Summary Judgment To Defendant Against Plaintiff* (Doc. # 74) filed September 7, 1999 be and hereby is **DENIED.**

**5.** Matosantos seeks leave to amend its complaint to provide further detail regarding the new claims which it alleges. Matosantos does not comply with D.Kan.Rule 15.1, however, which requires a signed original of the proposed amended pleading. The Court therefore cannot determine whether Matosantos truly has additional allegations which for some reason it has failed to allege up to this point. In any event, Matosantos does not allege that it could not raise the additional factual allegations in the Puerto

Rico litigation. Therefore, any amendment by Matosantos appears to be a second attempt at meeting its burden of proving that Applebee's contracted or represented that it would pay for the inventory in question. As the Court noted in its prior order, plaintiff's failure to meet the burden of proof originally does not prevent issue preclusion from applying to subsequent litigation. *See Memorandum & Order* (Doc. # 64) at 10.