**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 16 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MATOSANTOS COMMERCIAL
CORPORATION,

      Plaintiff-Appellant,

v.

APPLEBEE'S INTERNATIONAL,
INC.,

      Defendant-Appellee.

No. 99-3396

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 99-CV-2105)

---

Bruce Keplinger (Melissa D. Allemann with him on the brief), Norris, Keplinger
& Herman, L.L.C., Overland Park, Kansas, for Appellant.

Michael Thompson (Brian D. Martin with him on the brief), Blackwell, Sanders,
Peper, Martin, L.L.P., Kansas City, Missouri, for Appellee.

---

Before **HENRY,** and **MURPHY,** Circuit Judges**,** and **MILLS,**[*] District Judge.

---

[*]Honorable Richard Mills, District Judge, United States District Court for
the Central District of Illinois, sitting by designation.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Matosantos Commercial Corporation ("Matosantos") brought suit against Applebee's International, Inc. ("Applebee's") for money allegedly owed by Applebee's to Matosantos. The district court determined that Applebee's liability to Matosantos had already been decided in a prior adjudication and thus granted Applebee's motion for summary judgment.

Subject matter jurisdiction in the district court was based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1), (c)(1). On the day the judgment of the district court was entered, Matosantos filed a motion for reconsideration. The district court denied the motion for reconsideration, and within thirty days Matosantos filed a notice of appeal. Because Applebee's had asserted a third-party claim, the district court then entered a certification under Rule 54(b) of the Federal Rules of Civil Procedure. Thus, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291. *See Wagoner v. Wagoner*, 938 F.2d 1120, 1122-23 (10th Cir. 1991); *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645-46 (10th Cir. 1988). Because the district court correctly applied collateral estoppel to Matosantos' claim, the grant of summary judgment is **affirmed**.

## II. FACTS AND PROCEDURAL HISTORY

Appellant Matosantos is a distributor of products to national restaurant chains.[1] Appellee Applebee's is a franchiser of casual dining restaurants known as Applebee's Neighborhood Grill and Bar. Applebee's granted a franchise to Apple Development Associates II ("ADA") for two Applebee's restaurants in Puerto Rico. The actual operation of the two restaurants was conducted by Casual Dining Restaurant Management of Puerto Rico, Inc. ("Casual Dining"), an affiliate of ADA.

In April 1995, Matosantos entered into a contract with Casual Dining for the delivery of certain products required for the operation of the two restaurants (the "Purchase and Delivery Contract"). According to the terms of the Purchase and Delivery Contract, Casual Dining was to purchase or arrange for a third party to purchase Matosantos' "inventory and merchandise in transit or committed for purchase" upon termination of the Purchase and Delivery Contract.

Because the two restaurants were not successful, ADA decided to close and sell the restaurants. Applebee's had a right of first refusal on the sale of the restaurants. In order to determine whether they wanted to exercise that right, Applebee's negotiated a contract with ADA on February 13, 1996, allowing

---

[1]Matosantos has asked this court for leave to file a supplemental appendix. The motion is granted.

Applebee's to manage the two restaurants until March 8, 1996 (the "Management Contract").

According to the terms of the Management Contract, Applebee's was not to "assume or take an assignment of Owner's [ADA and its affiliate Casual Dining] right, title and interest in and to all contracts . . . needed in and for the operation of the Restaurants." Applebee's was responsible for all the expenses incurred while it was operating the restaurants, including the products delivered by Matosantos.

An Applebee's subsidiary operated the restaurants until March 14, 1996, at which time the restaurants were closed. Matosantos made its last delivery to the restaurants on March 12, 1996. Matosantos was paid for all the products it delivered to the restaurants between February 14 and March 12, 1996. Pursuant to instructions from Applebee's, Matosantos delivered to a third party its existing inventory not yet supplied to the restaurants.

On July 12, 1996, Matosantos filed a complaint against Applebee's in the United States District Court for the District of Puerto Rico. In the complaint Matosantos sought payment from Applebee's for Matosantos' remaining inventory not supplied to the restaurants and later delivered to the third party. Matosantos claimed Applebee's had assumed, through the Management Contract with ADA and other verbal representations made to Matosantos at that time, Casual Dining's

-4-

obligations under the Purchase and Delivery Contract to pay for Matosantos'

remaining inventory upon termination of the Purchase and Delivery Contract.

Applebee's responded by filing a motion to dismiss, arguing the Puerto

Rico district court did not have *in personam* jurisdiction over it. One of the

dispositive issues raised in the personal jurisdiction analysis was whether

Applebee's had "assumed liability for the [Purchase and Delivery Contract]

executed by [Matosantos] and Casual Dining." *Matosantos Commercial Co. v.

Applebee's Int'l, Inc.*, 2 F. Supp. 2d 191, 195 (D.P.R. 1998) ("*Matosantos I*").

The Puerto Rico district court concluded Matosantos had failed to produce

sufficient support for its claim that Applebee's had assumed the obligations of the

Purchase and Delivery Contract. *See id.* at 195-96. The Puerto Rico district court

thus granted Applebee's motion to dismiss for lack of personal jurisdiction. *See

id.* at 197.

Rather than appeal the Puerto Rico district court's decision, Matosantos

next filed a complaint in the United States District Court for the District of

Kansas. In the complaint, Matosantos sought payment from Applebee's for

Matosantos' inventory remaining after the restaurants closed which was later

delivered to the third party. In support of its claim for relief, Matosantos asserted

six causes of action: breach of contract, breach of oral contract, third-party

beneficiary to the Management Contract, contract by estoppel, intentional misrepresentation, and negligent misrepresentation.

Applebee's answered Matosantos' complaint and filed a motion for summary judgment, arguing Matosantos' claims were barred by collateral estoppel (also known as "issue preclusion") because the issues underlying Matosantos' causes of action had already been decided against Matosantos in the Puerto Rico district court. The Kansas district court granted Applebee's motion for summary judgment. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 64 F. Supp. 2d 1105, 1113 (D. Kan. 1999) ("*Matosantos II*"). The Kansas district court determined that the issue presented in Matosantos' complaint was identical to the issue decided by the Puerto Rico district court—"whether Applebee's assumed or represented that it would assume Casual Dining's purchase agreement with Matosantos." *Id.* at 1109. The Kansas district court rejected Matosantos' arguments that a dismissal for lack of personal jurisdiction is not an adjudication on the merits and that Matosantos was not given a full and fair opportunity to litigate the issue. *See id.* at 1109-11.

Matosantos filed a motion for reconsideration, arguing that the issues raised in the Kansas complaint were not identical to the issues decided by the Puerto Rico district court. The Kansas district court rejected Matosantos' argument, noting that the arguments advanced by Matosantos were "merely a new spin on

-6-

the exact same evidence and facts, in an attempt to prove the matter which Matosantos failed to prove in Puerto Rico: an agreement or representation by Applebee's to pay for the Matosantos inventory." *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 189 F.R.D. 467, 473 (D. Kan. 1999) ("*Matosantos III*"). Thus, the Kansas district court denied Matosantos' motion for reconsideration. *See id.* at 474.

## III. DISCUSSION

### A. Motion for Summary Judgment

This court reviews *de novo* the Kansas district court's grant of Applebee's motion for summary judgment based on collateral estoppel. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

This court has previously stated that "the preclusive effect given in federal court to a prior federal decision is subject to federal law." *Dodge*, 203 F.3d at 1197. In *Dodge*, fourteen plaintiffs attempted to use offensive collateral estoppel to prevent the defendant from relitigating the defendant's negligence in the operation of a uranium mill in Colorado. *See id.* at 1193-98. In an earlier lawsuit filed by eight plaintiffs, the defendant had been found negligent under state law.

*See id.* at 1194. Both the original suit by the eight plaintiffs and the latter suit by the fourteen plaintiffs were filed in federal court. *See id.* at 1192-94. Although subject matter jurisdiction in *Dodge* for the federal district courts to consider the state negligence claims made in both suits was apparently based on 28 U.S.C. § 1367 supplemental jurisdiction, the collateral estoppel rule announced in *Dodge* would seem to apply when jurisdiction in the federal courts is based on 28 U.S.C. § 1332 diversity jurisdiction, as is the case here. *See* 19 Charles Alan Wright et al., Federal Practice and Procedure § 4520 (2d ed. 1996). Having determined that the collateral estoppel effect to be given the prior federal judgment was a question of federal law, the *Dodge* court proceeded to delineate this court's collateral estoppel requirements: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Dodge*, 203 F.3d at 1198.

The Supreme Court has recently confirmed that the preclusive effect given to federal court judgments is a question of federal law. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 121 S. Ct. 1021 (2001). In *Semtek*, the plaintiff's original suit against the defendant in California federal district court was

dismissed because it failed to comply with California's two-year statute of limitations. *See id.* at 1023. Plaintiff then filed suit in Maryland state court. *See id.* The Maryland state court dismissed plaintiff's suit under res judicata. *See id.* at 1024. The Maryland Court of Special Appeals affirmed the dismissal, explaining that the res judicata effect given to federal diversity judgments is prescribed by federal law. *See id.*

On appeal from the Maryland Court of Special Appeals, the Supreme Court confirmed that not only is the claim-preclusive effect of a federal diversity judgment a question of federal law, but further stated that the claim-preclusive effect of all federal judgements is a question of federal law ultimately decided by the Supreme Court. *See id.* at 1027-28. The Supreme Court continued, however, by stating that the best federal rule for the claim-preclusive effect of a federal diversity judgment is to adopt "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 1028. Thus, on remand in *Semtek*, the Maryland Court of Special Appeals was to apply California claim preclusion law to determine the res judicata effect of the California federal district court decision. *See id*. at 1029.

There are obvious differences between the case before this court and *Semtek*. This case deals with collateral estoppel, while *Semtek* is a res judicata case. After having its first case dismissed, Matosantos brought suit in the United

States District Court for the District of Kansas, while the plaintiff in *Semtek* sought relief in Maryland state court after having its claims dismissed from California federal district court. In addition, while California is a state, Puerto Rico is a United States territory. Nevertheless, an argument can be made that *Semtek* requires this court to apply Puerto Rico collateral estoppel law to Matosantos' claim. Under Puerto Rico collateral estoppel law, "when an issue essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties." *Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000) (quotation omitted). Because, however, the result is the same regardless of whether Puerto Rico or Tenth Circuit collateral estoppel law applies, this court need not decide which law to apply.

**1. Issues Identical**

Matosantos argues the five causes of action asserted in its Kansas complaint raise new issues not addressed by the Puerto Rico district court. If true, this would obviously preclude collateral estoppel under both the test articulated in *Dodge* and under Puerto Rico law. *See Dodge*, 203 F.3d at 1198; *Baez-Cruz v. Municipality of Comerio*, 140 F.3d 24, 30 (1st Cir. 1998).

That Matosantos has asserted additional claims in its Kansas complaint, however, is of no importance if the new claims are based on the underlying issue

-10-

already decided by the Puerto Rico district court. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit *on a different cause of action* involving a party to the first case." (emphasis added)); *Baez-Cruz*, 140 F.3d at 30; Restatement (Second) of Judgments § 27 (1980). All the claims pleaded in Matosantos' Kansas complaint are based on the underlying issue decided in the Puerto Rico district court: "whether [Applebee's] assumed or promised to assume Casual Dining's obligation to pay for the Matosantos inventory." *Matosantos II*, 64 F. Supp. 2d at 1109. Matosantos' breach of contract claim states that "Applebee's assumed all obligations of Casual Dining . . . under the [Purchase and Delivery Contract]." Matosantos' breach of oral contract, contract by estoppel, intentional misrepresentation, and negligent misrepresentation claims all stem from the alleged statements of an Applebee's executive, which according to Matosantos constituted "oral contracts for Applebee's to perform the obligations of Casual Dining . . . under the Purchase and Delivery [Contract] and of Applebee's [under the Management Contract]." Similarly, Matosantos' third-party beneficiary claim states that Applebee's became responsible, under the Management Contract, for Casual Dining's obligations to pay for Matosantos' remaining inventory. Not only does Matosantos attempt to relitigate the very issue decided in the Puerto

Rico district court, but it also relies on the same evidence and factual allegations considered by the Puerto Rico district court: the Management Contract, facsimile letters sent by Applebee's executives, and alleged oral representations by Applebee's executives. Matosantos seeks to relitigate the same issues previously decided in the Puerto Rico district court under the guise of new claims for relief; such an approach is inconsistent with the doctrine of collateral estoppel.[2]

## 2. Final Adjudication on the Merits

Matosantos argues the dismissal of its complaint in Puerto Rico for lack of personal jurisdiction does not constitute a final adjudication on the merits. To support its argument, Matosantos relies on Rule 41(b) of the Federal Rules of Civil Procedure, which states as follows: "Involuntary Dismissal: Effect Thereof. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a

---

[2]Matosantos also argues that its Kansas complaint raises new issues because the Puerto Rico complaint was based on a theory that Applebee's assumed the obligations of Casual Dining, while the Kansas complaint is based on a theory that Applebee's created a new contract with Matosantos. As the district court correctly noted, however, Matosantos did not advance this theory in responding to Applebee's motion for summary judgment, but instead raised it only in its motion for reconsideration. *See Matosantos III*, 189 F.R.D. at 472. A motion for reconsideration is not, however, an opportunity for the losing party to raise new arguments that could have been presented originally. *See Havoco of Am., Ltd., v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1336-37 (7th Cir. 1992); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Thus, this court need not, and does not, consider the argument. *See Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993).

dismissal for lack of jurisdiction . . . , operates as an adjudication upon the merits." Fed. R. Civ. P. 41(b) (emphasis omitted). Matosantos claims Rule 41(b) states that a dismissal for lack of personal jurisdiction does not operate as an adjudication upon the merits and thus has no preclusive effect.

In making this argument, Matosantos confuses res judicata (also known as "claim preclusion") with collateral estoppel (also known as "issue preclusion"). Although the dismissal for lack of personal jurisdiction in the Puerto Rico district court does not have res judicata effect, it does have collateral estoppel effect, preventing the relitigation of issues decided in the Puerto Rico district court. A leading commentator explains the concept as follows:

> Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question. . . . The provision in Rule 41(b) that dismissal for lack of jurisdiction does not operate as an adjudication on the merits is not intended to change this result.

18 Charles Alan Wright et al., Federal Practice and Procedure § 4436 (1981); *see also Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999) ("[A] jurisdictional dismissal precludes only the relitigation of the ground of that dismissal, and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect." (citations omitted)); *GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987) (explaining that, despite Rule 41(b), a judgment dismissing an action for lack of jurisdiction will "have preclusive effect as to matters

-13-

actually adjudicated" and will "preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal"); Restatement (Second) of Judgments § 20 cmt. b (1980).[3]

In a case presenting issues almost identical to the present case, this court has already rejected Matosantos' argument that Rule 41(b) allows issues decided in a jurisdictional dismissal to be relitigated in another proceeding. In *Stewart Securities Corp. v. Guaranty Trust Co.*, this court stated that Rule 41(b) does not alter the doctrine of collateral estoppel:

> Rule 41(b) provides, in essence, that a dismissal for lack of jurisdiction does not operate as an adjudication on the merits. However, such does not answer our precise question, which is whether, where there has been an adjudication on the merits of a jurisdictional *issue* and a determination that there is no federal jurisdiction, the doctrine of [collateral estoppel] precludes a subsequent relitigation of the same jurisdictional *issue* between the same parties.

597 F.2d 240, 241 (10th Cir. 1979) (emphases added).[4]

This court concluded in *Stewart Securities* that collateral estoppel prevented a party from relitigating an issue critical to jurisdiction that had

---

[3]It has been noted that the phrase "on the merits" is "an unfortunate phrase, which could easily distract attention from the fundamental characteristics that entitle a judgment to greater or lesser preclusive effect." 18 Charles Alan Wright et al., Federal Practice and Procedure § 4435 (1981); *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 121 S. Ct. 1021, 1025 (2001) (noting the confusion associated with the phrase).

[4]The court in *Stewart Securities* refers to issue preclusion under the generic term "res judicata."

-14-

previously been decided in a prior lawsuit dismissed for lack of jurisdiction. *See id.* at 240. Although uncommon, it is not legally significant that the issue foreclosed in the present case goes to the merits of Matosantos' claim rather than the jurisdiction of the Kansas district court. *See Roth v. McAllister Bros., Inc.*, 316 F.2d 143, 143-45 (2d Cir. 1963). The Seventh Circuit, in a unpublished case with facts remarkably similar to the present case, has applied similar reasoning to prevent relitigation of an issue dispositive on the merits of a plaintiff's case because the issue had been decided against the plaintiff in a prior suit dismissed for lack of personal jurisdiction. *See Unity House, Inc., v. First Commercial Fin. Group, Inc.*, No. 98-1060, 1999 WL 164924, at *1-2 (7th Cir. Mar. 17, 1999) (unpublished disposition). This court agrees with the analysis used by the Second and Seventh Circuits.[5]

---

[5]The United States District Court for the Southern District of New York reached a different outcome in *Four Star Capital Corp. v. Nynex Corp.*, concluding that an issue determined in a previous lawsuit dismissed for lack of personal jurisdiction was not foreclosed as to the merits of a plaintiff's case in a subsequent lawsuit in a court of proper jurisdiction. *See Four Star Capital, Corp., v. Nynex Corp.*, No. 93 Civ. 3706 (LMM), 1993 WL 350016, at *2 (S.D.N.Y. Sept. 9, 1993) (unpublished disposition). In *Four Star* the New York district court failed to recognize the substantial authority contrary to its decision. In addition, the New York district court relied on the Second Circuit case of *Arnold Graphics Industries v. Independent Agent Center, Inc.*, 775 F.2d 38 (2d Cir. 1985). *See Four Star*, 1993 WL 350016, at *2. *Arnold*, however, stands only for the uncontroversial rule that a dismissal "for lack of personal jurisdiction has no *res judicata* effect because it [is] not a final judgment" on personal jurisdiction. *Id.* at 41 (emphasis added); *see also* 18 Charles Alan Wright et al., Federal Practice and Procedure § 4436 (1981) ("Dismissal for want of personal

The result is the same under Puerto Rico law. In *Muniz Cortes*, plaintiffs filed a complaint against defendants in the Superior Court of Puerto Rico. *See Muniz Cortes*, 229 F.3d at 13. Plaintiffs' claim was dismissed in part, and they then filed a similar suit in the United States District Court for the District of Puerto Rico, this time alleging federal claims in addition to their Puerto Rico law claims. *See id.* The federal district court granted the defendant's motion for summary judgment on grounds of "res judicata and/or collateral estoppel." *Muniz Cortes v. Intermedics, Inc.*, 63 F. Supp. 2d 160, 165 (D.P.R. 1999) (emphasis omitted). The First Circuit affirmed. *Muniz Cortes*, 229 F.3d at 15. Applying Puerto Rico law, the First Circuit explained that even if the Superior Court of Puerto Rico's dismissal could be interpreted as a dismissal for lack of subject matter jurisdiction, the judgment could still have collateral estoppel effect in the later suit filed in federal district court. *See id.* at 14.

**3. Full and Fair Opportunity to Litigate**

jurisdiction precludes relitigation of the same *issue* of jurisdiction, but does not preclude a second action on the same *claim* in a court that can establish personal jurisdiction." (emphases added and footnote omitted)). Although part of the *Arnold* opinion does deal with collateral estoppel, the holding is merely that the doctrine does not apply when the issue being litigated is not identical to the previous issue litigated. *See id.* Thus, *Arnold* in no way supports the proposition that a jurisdictional issue decided in a case dismissed for lack of personal jurisdiction can be relitigated in a subsequent suit as it pertains to the merits of the case. Any reliance on *Arnold* for that proposition represents confusion over the difference between collateral estoppel and res judicata.

Under the collateral estoppel factors articulated by this court in *Dodge* and under Puerto Rico law, a litigant must have been given a full and fair opportunity to litigate the issue in a prior proceeding before collateral estoppel can be applied against it in a later proceeding. *See Dodge*, 203 F.3d at 1198; *Baez-Cruz*, 140 F.3d at 30. Matosantos argues it did not have a full and fair opportunity to litigate the relevant issue in the Puerto Rico district court because the decision was made pursuant to a motion to dismiss for lack of jurisdiction. Matosantos, however, was allowed to submit evidence in support of its contention that Applebee's had assumed responsibility for Matosantos' remaining inventory. *See Matosantos I*, 2 F. Supp. 2d at 196 n.5. In the context of a defendant's motion for summary judgment, a plaintiff has a full and fair opportunity to litigate if it is allowed to submit evidence to defeat a motion for summary judgment. *See Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 421 F.2d 1313, 1319 (5th Cir. 1970) ("It would be strange indeed if a summary judgment could not have collateral estoppel effect."); 18 Charles Alan Wright et al., Federal Practice and Procedure § 4419 (1981) ("It is clear enough that issue preclusion generally is appropriate if some effort is made to litigate the issue, but the evidence introduced is held insufficient to carry the burden of persuasion or even the burden of production."). Indeed, under Puerto Rico law, the original proceeding "need do no more than satisfy the minimum procedural requirements of the

Fourteenth Amendment's Due Process Clause." *See Baez-Cruz*, 140 F.3d at 30 (quotation omitted). Because Matosantos had every opportunity to present evidence that any plaintiff faced with a motion for summary judgment would have, and because Matosantos has made no claim that the Puerto Rico district court failed to comply with due process, it is not relevant for purposes of Matosantos' full and fair opportunity to litigate the issue that Applebee's motion in the Puerto Rico district court was labeled as a motion to dismiss.[6]

Collateral estoppel is also not appropriate when a party in a subsequent suit faces a less demanding burden of proof than the burden of proof in the prior litigation. *See Blackwelder v. Millman*, 522 F.2d 766, 773 (4th Cir. 1975); Restatement (Second) of Judgments §28(4) (1980). In the Puerto Rico district court, however, Matosantos had only to proffer "evidence that, if credited, is enough to support" a finding that Applebee's had accepted responsibility for Matosantos' remaining inventory. *Matosantos I*, 2 F. Supp. 2d at 195 (quotation

---

[6]Matosantos also argues it lacked a full and fair opportunity to litigate the relevant issue because it was denied a request for discovery. Matosantos did not raise this argument, however, until its motion for reconsideration of the Kansas district court's decision. Thus, this court need not, and does not, consider the argument. *See supra* note 2. In any event, the Puerto Rico district court denied the discovery request because it determined the request did not relate to whether Applebee's had assumed responsibility for Matosantos' remaining inventory. *See Matosantos I*, 2 F. Supp. 2d at 197. Matosantos, which did not appeal the Puerto Rico district court's final order and thus did not appeal the order denying discovery, has not attempted to argue this decision was incorrect. Thus, even if this court were to consider Matosantos' argument, it appears to be without merit.

-18-

omitted). Matosantos could not offer evidence to satisfy this minimal standard, which is no more demanding than the standard by which a court judges a motion for summary judgment on the merits.

Matosantos also argues it would have submitted additional evidence had it known the motion for dismissal on jurisdictional grounds would have a preclusive effect on the merits of its case. While it is conceivable that a litigant could be deprived a full and fair opportunity to litigate if the potential preclusive effect of the previous decision was unforeseeable, such is not the case in this litigation. *See* Restatement (Second) of Judgments, § 28(5)(b) (1980). The personal jurisdiction issue addressed in the Puerto Rico district court, on which the court allowed both parties to submit evidence, was essential to Matosantos' claim. Thoughtful contemplation on the part of Matosantos would have alerted it to the possibility that a judgment against it could have preclusive effect on the merits of its case in a later suit. That Matosantos chose not to litigate the issue as vigorously as it now would have liked does not mean Matosantos never had the opportunity to litigate the issue. Thus, (1) because Matosantos was given an opportunity to offer evidence on the issue of whether Applebee's assumed responsibility for Matosantos' remaining inventory, (2) because Matosantos has failed to claim any violation of due process by the Puerto Rico district court, (3) because the standard used by the Puerto Rico district court was no more

demanding than the standard for summary judgment, and (4) because it was not unforeseeable that the Puerto Rico district court's decision would later have preclusive effect on the merits, Matosantos was given a full and fair opportunity to litigate its claim in the Puerto Rico district court.

### 4. Perfect Identity of Parties

Puerto Rico law can be interpreted to require the perfect identity of parties between the first and second suit for collateral estoppel to apply. *See Baez-Cruz*, 140 F.3d at 29. Although Applebee's has asserted a third-party complaint against other parties, the underlying suit between Applebee's and Matosantos in Kansas district court involves the exact same parties involved in the Puerto Rico suit. *See Matosantos II*, 64 F. Supp. 2d at 1105; *Matosantos I*, 2 F. Supp. 2d at 191. Thus, this requirement is met.

## B. Motion for Reconsideration

Matosantos also claims the Kansas district court erred in denying its motion for reconsideration. The Kansas district court's denial of Matosantos' Rule 59(e) motion for reconsideration is reviewed for an abuse of discretion. *See Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994). In arguing the Kansas district court abused its discretion in denying the motion for reconsideration, Matosantos merely restates the arguments already addressed in this opinion, and thus fails to meet its heavy burden.

## IV. CONCLUSION

For the reasons stated above, the Kansas district court's grant of Applebee's motion for summary judgment is **AFFIRMED**.