**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICHARD D. FRY,

      Plaintiff-Appellant,

v.

DIANE AL-ABDULJALIL, M.D.;
CAPTAIN ROD BUXMAN;
SERGEANT ROCKY SMITH; and
SERGEANT DAVE BELL.

      Defendants-Appellees.

No. 05-1179
(D.C. No. 99-MK-2388 (CBS))
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **McCONNELL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Richard D. Fry appeals the district court's grant of summary judgment in favor of appellees on his 42 U.S.C. § 1983 claims. He also appeals the district court's denial of his motion for reconsideration. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

I

Mr. Fry is legally blind. Upon his arrival at Fremont Correctional Facility in May 1997, he requested assignment to a single-occupancy cell because of his impairment. His request was denied, and Mr. Fry was assigned to a double-occupancy cell with Spencer Peterson as his cell mate. Mr. Fry contends that Mr. Peterson engaged in a campaign of harassment against him. Mr. Fry alleges that he repeatedly contacted defendants Buxman, Smith and Bell to complain about Mr. Peterson's harassment, and to request a single-occupancy cell. His requests were denied.

In December 1997, Mr. Fry and Mr. Peterson were involved in a physical altercation, which caused injuries to Mr. Fry ("the Peterson incident"). Mr. Fry was housed in another facility for medical treatment after the Peterson incident, but returned to Fremont in February 1998. At that time, he was housed in a cell with Mike Dewine, despite again requesting that he be assigned to a single-occupancy cell. He alleges that he became ill with stomach problems, and that Mr. Dewine caused these problems by placing foreign substances in his drinks

-2-

("the Dewine incident"). In November 1998, defendant Al-Abduljalil recommended that Mr. Fry be given a single-occupancy cell.

In December 1999, Mr. Fry filed a complaint against appellees and several other defendants, alleging that they failed to protect him from harm resulting in injury during the Peterson incident and the Dewine incident. After amending his complaint several times, two Eighth Amendment claims remained pending against the parties to this appeal: 1) that Buxman, Smith, and Bell were deliberately indifferent and grossly negligent by failing to assure Mr. Fry's safety and address his serious medical needs; and 2) that Dr. Al-Abduljalil acted with deliberate indifference to Mr. Fry's serious medical needs and health and safety when she denied Mr. Fry's request for a single-occupancy cell.

The district court granted summary judgment in favor of appellees based on its determination that Mr. Fry failed to exhaust his administrative remedies with respect to the Peterson incident, and that he failed to establish that he suffered any physical injury as a result of the Dewine incident. Mr. Fry filed a motion for reconsideration of the district court's order granting summary judgment, which the district court denied.

II

We review de novo the district court's grant of summary judgment in favor of appellees, applying the same standards as the district court. *See Orr v. City of*

-3-

*Albuquerque*, 417 F.3d 1144, 1148 (10th Cir. 2005). We review for abuse of

discretion the district court's denial of the motion for reconsideration. *See*

*Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1213

(10th Cir. 2001).

Exhaustion of Administrative Remedies

An inmate must exhaust all available administrative remedies before filing

suit. 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all suits

regarding prison life, whether they challenge general circumstances or particular

episodes. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). The burden of

demonstrating exhaustion is on the plaintiff. *See Steele v. Fed. Bureau of*

*Prisons*, 355 F.3d 1204, 1209-10 (10th Cir. 2003).

The district court determined that Mr. Fry had never filed a grievance

concerning his request for a single-occupancy cell, or regarding the injuries he

suffered after the Peterson incident. Mr. Fry essentially argues that he did not

have to exhaust any administrative remedies with respect to his request for a

single-occupancy cell because the grievance procedure does not apply to those

kinds of "classification" issues. Aplt. Br. at 18. On appeal, Mr. Fry does not

provide any record support for this assertion. Similarly, in the district court,

Mr. Fry did not provide a definition of classification or explain how his request

constituted a classification issue. In contrast, the appellees did provide the

following definitions from the Department of Corrections administrative regulation: 1) "Classification" is "[t]he judgmental and discretionary process whereby an inmate is regularly reviewed to determine the level of custody and facility assignment," and 2) "Custody level" is "[t]he degree of supervision required for each inmate utilizing the terms of minimum, minimum restricted, medium, close, and administrative segregation." Aplt. App., Vol. II at 338. As the district court correctly noted, "nothing in the definition of 'classification' suggests that the decision to assign an inmate to a single- or double-occupancy cell falls within its definition." *Id.* at 430.

The district court also noted that, even if Mr. Fry's request was a classification issue, the grievance procedure states that there is an appeal process available with regard to classification issues, but Mr. Fry did not demonstrate that he exhausted that process. In the district court, Mr. Fry simply argued that he did not need to exhaust his administrative remedies because the grievance procedure was not applicable to classification issues. Mr. Fry now argues for the first time on appeal that he did exhaust the separate classification appeal process by making verbal requests that he be reassigned to a single-occupancy cell. Again, he does not offer any record support for his argument. Aplt. Br. at 18-19. Moreover, he did not make this argument before the district court. Accordingly, this argument is waived. *See Smith v. Rogers Galvanizing Co.,* 128 F.3d 1380, 1385-86 (10th

Cir. 1997) ("Generally, we will not consider an issue that was not raised and resolved in the trial court.")

Finally, Mr. Fry asserts that he was unable to file a grievance because he is legally blind and therefore the administrative remedies were not available to him. *See* 42 U.S.C. 1997e(a) ("No action shall be brought . . . until such administrative remedies as are *available* are exhausted." (emphasis added)). Mr. Fry fails to explain, however, how he was able to file at least two other grievances during this same period of time. He filed one grievance after the Peterson incident claiming that some of his personal items were missing when he returned from medical treatment, and he filed another grievance related to the Dewine incident. Because Mr. Fry was able to use the grievance procedure on other occasions, he has not demonstrated that the administrative remedies were not available to him.

<u>Physical Injury Requirement</u>

Mr. Fry did file a grievance with respect to the Dewine incident. The district court determined, however, that Mr. Fry had not satisfied the physical injury requirement in 42 U.S.C. § 1997e(e). That section states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*." *Id.* (emphasis added). Mr. Fry

-6-

asserts that he did make a showing of physical injury. He contends that he submitted an affidavit in which he stated that he suffered stomach problems due to chemicals being placed in his drink by Mr. Dewine. He also asserts that an unidentified doctor at Fremont verbally confirmed his self-diagnosis.

In response to summary judgment, Mr. Fry made the following statement: "Mr. Fry became ill with stomach problems, and believes it is a result of Mr. Dewine placing cleaning solutions in Mr. Fry's drinks. The doctor verbally confirmed Mr. Fry's suspicions. Please see Exhibit 'A', ¶ 12." Aplt. App., Vol. II at 249. Exhibit A is Mr. Fry's affidavit, which states: "I was going to the doctor for stomach problems, and believed that Mr. Dewine was putting cleaning solutions in my drinks. The doctor confirmed my belief." *Id.* at 259. Mr. Fry's personal conclusions regarding his stomach problems are insufficient to demonstrate a triable issue of fact for the purpose of overcoming summary judgment. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005); *see also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (stating that an inmate's self-diagnosis alone cannot establish that he suffered from kidney stones). Moreover, the statements that a doctor confirmed the basis for his stomach problems directly contradicts the following testimony from his deposition:

> Q. Okay. *Did any physician or medical professional diagnose you as having any injury as a result of ingesting the cleaning fluids?*
>
> A. It was making me sick. I was vomiting. *I wasn't diagnosed*, but I was sick, okay. It didn't do me no good I know that.
>
> Q. I understand you were sick, but *did anybody ever pinpoint the cause of that sickness to your knowledge?*
>
> A. *Well, no.* When the P.A. told me about the single cell order, in my own head I thought, well, I'm getting away from this guy so I didn't push it.

Aplt. App, Vol. I at 126 (emphasis added).

Mr. Fry failed to come forward with evidence sufficient to demonstrate a triable issue of fact as to whether he actually suffered any injury traceable to defendants' conduct.

## Motion for Reconsideration

Mr. Fry filed a motion for reconsideration with the district court challenging the district court's determination that he had not exhausted his administrative remedies. In his motion for reconsideration, he argued that the written grievance procedure was not available to him because of his visual impairment. The district court denied the motion for reconsideration because this argument existed at the time of his response to summary judgment and could have been presented at that time. Moreover, the district court noted that Mr. Fry had invoked the written grievance procedure at least twice, rebutting his assertion that the procedure was not available to him. As discussed *supra*, we agree that Mr. Fry did not demonstrate that the grievance procedure was unavailable to him.

The district court did not abuse its discretion in denying the motion for reconsideration.

The judgment of the district court is AFFIRMED.

Entered for the Court


Michael W. McConnell
Circuit Judge