**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 9, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

L. KIRK TOMPKINS; SUSIE
TOMPKINS,

     Plaintiffs - Appellants,

v.

LIFEWAY CHRISTIAN RESOURCES
OF THE SOUTHERN BAPTIST
CONVENTION; THOM RAINER,
President of Lifeway; JERRY L. RHYNE,
C.F.O. of Lifeway; LARRY D. CANNON,
Sec. of Lifeway; DAVID WEEKLEY,
Director of Glorieta 2.0, Inc.; TERRY
LOOPER, Director of Glorieta 2.0, Inc.;
LEONARD RUSSO, Director of Glorieta
2.0, Inc.; ANTHONY SCOTT, Executive
Director of Glorieta 2.0, Inc.; HAL HILL,
Consulting Director of Glorieta 2.0, Inc.;
LINDA K. DEAN, Trustee of Lifeway;
JEFF WARD, Director of Finance and
Administration of Glorieta 2.0, Inc.,

     Defendants - Appellees.

No. 18-2187
(D.C. No. 1:17-CV-00460-RB-KRS)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **PHILLIPS**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

L. Kirk Tompkins and Susie Tompkins (Tompkinses), appearing pro se, appeal the district court's orders dismissing their action with prejudice and denying leave to amend their complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's orders and grant defendants-appellees' motion for sanctions.

## I. **Background**

This is the Tompkinses second suit against many of the same defendants and arising from the 2013 sale of the 2,400-acre Glorieta Conference Center (GCC) in New Mexico. The Tompkinses had a ground lease for a single lot at GCC on which stood a house they owned (Aspen Property). Their lease provided that when it ended, the lessor, defendant LifeWay Christian Resources of the Southern Baptist Convention (LifeWay), had the sole option to renew the lease, and if Lifeway did not renew the lease, LifeWay had the option to purchase any improvements on the lot. The lease further provided that if LifeWay did not exercise the purchase option, the Tompkinses had six months to remove any improvements, and if they failed to do so, they would surrender all right and title to the improvements to LifeWay.

When LifeWay decided to sell GCC to defendant Glorieta 2.0, Inc. (for $1.00), it did not renew the Tompkinses' lease or exercise its purchase option to buy their house. The Tompkinses did not remove the house from the lot but instead filed a lawsuit in federal court, asserting three claims (violation of corporate charter, constitution, and bylaws; fraudulent conveyance; and breach of implied contract) against a number of defendants, including LifeWay, Glorieta 2.0, and some of their

2

directors and officers. The court dismissed the suit for various reasons, including lack of personal jurisdiction, lack of Article III standing, and failure to state a claim for relief. *See Tompkins v. Exec. Comm. of the S. Baptist Convention*, No. CIV 13-0840 JB/CG, 2015 WL 1568375 (D.N.M. Mar. 31, 2015) (*Tompkins I*). The Tompkinses appealed. After appointing counsel for them and hearing oral argument, we affirmed. *See Tompkins v. Lifeway Christian Res. of the S. Baptist Convention*, 671 F. App'x 1034 (10th Cir. 2016) (*Tompkins II*).

While their appeal was pending, LifeWay offered the Tompkinses $84,999 in exchange for a release and an agreement to dismiss their appeal (Purchase Offer). According to the Purchase Offer, this amount was the same as Glorieta 2.0 had offered the Tompkinses for the improvements in 2013, at the time Glorieta 2.0 purchased GCC.[1] The Tompkinses refused the Purchase Offer, which was allegedly well below market value.

Soon after we decided *Tompkins II*, the Tompkinses, again pro se, filed a second action in federal court against LifeWay, Glorieta 2.0, and a number of their officers and directors, some of whom were defendants in *Tompkins I*. Defendants filed motions to dismiss, which the district court granted in part. The district court dismissed claims four and five of the Tompkinses' first amended complaint for failure to state a claim, but without prejudice to the filing of a second amended

---

[1] According to the Purchase Offer, LifeWay still owned the lots of those lessees who had not already sold their improvements to Glorieta 2.0.

3

complaint addressing the deficiencies in those claims.[2] The district court denied the motions to dismiss claims one, two, and three without prejudice to defendants filing a motion for summary judgment addressing the same issues.

The Tompkinses sought leave to file a second amended complaint. Proposed claims one, two, and three were substantially similar to the first three claims in their first amended complaint, but proposed claims four and five were new. In claim four, the Tompkinses asserted that defendants engaged in "bid rigging" in violation of a provision of the Sherman Antitrust Act, 15 U.S.C. § 1. They alleged that LifeWay's decision not to exercise its option to purchase the Aspen Property was designed to leave Glorieta 2.0 as the only bidder for that property and led to the allegedly low-ball Purchase Offer (and the identical offer Glorieta 2.0 had initially made to purchase the Aspen Property when it acquired GCC), thereby unreasonably limiting competition. In proposed claim five, the Tompkinses asserted that Lifeway and three of its officers (defendants Rainer, Rhyne, and Cannon) breached their fiduciary duties by failing to perform needed maintenance and repairs at GCC and by fraudulently conveying GCC to Glorieta 2.0.

Defendants moved for summary judgment and opposed the motion to file the second amended complaint. The district court granted summary judgment and denied the motion to amend. The court first ruled that all claims against defendants

---

[2] Claim four was for breach of fiduciary duty regarding toxic waste allegedly dumped on GCC, and claim five, labelled "Extortion and Malice Aforethought," R., Vol. 2 at 47, concerned the treatment of the Tompkinses' trustee, who, for security purposes, remained living at the Aspen Property after their lease expired.

Weekley, Russo, and Looper were barred by issue preclusion, explaining that in *Tompkins I*, the district court had determined it lacked personal jurisdiction over those defendants and that a ruling on personal jurisdiction operates as a decision on the merits of the jurisdictional question for preclusion purposes. Next, the court determined that the Tompkinses' claims against the remaining individual defendants (Rainer, Rhyne, Cannon, Scott, Hill, Ward, and Dean) were barred by claim preclusion.[3]

Turning to LifeWay and Glorieta 2.0, the district court ruled that with two exceptions, all claims against them were barred by claim preclusion. The first excepted claim was part of claim three that the court construed as a claim for unconscionable contract based on the Purchase Offer. The court concluded that the Tompkinses failed to state a claim for unconscionable contract because the Purchase Offer was not a contract but a settlement offer, and because the Tompkinses refused it, there was no contract that could be deemed unconscionable.

---

[3] "The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (internal quotation marks omitted). One element of claim preclusion is that there was "a final judgment on the merits in an earlier action." *Id.* (brackets and internal quotation marks omitted). "In contrast to claim preclusion, issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). One element of issue preclusion is that "the prior action has been finally adjudicated on the merits." *Id.* (internal quotation marks omitted).

5

The second claim excepted from the district court's preclusion analysis regarding LifeWay and Glorieta 2.0 was the bid-rigging claim, which the court construed as a claim that those two defendants colluded to agree that LifeWay would not exercise its purchase option on the Aspen Property, which led to the low-ball offers by Glorieta 2.0 in 2013 and by LifeWay in the 2015 Purchase Offer. The court determined that the Tompkinses failed to state a Sherman Act claim for bid-rigging because they did not plead facts plausibly showing defendants "'had a conscious commitment to a common scheme designed to achieve an unlawful objective,'" or that any supposed agreement affected competition rather than "'a single market participant like [the Tompkinses].'" R., Vol. 7 at 44 (quoting *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 520 (S.D.N.Y. 2013)). The court further ruled that the Tompkinses lacked standing to bring a Sherman Act claim because none of their allegations showed that defendants' alleged conspiracy harmed the relevant market as a whole, but "only that they were individually harmed because Glorieta 2.0 offered them less than market value for their home." *Id.* at 45.

Based on these rulings, the district court dismissed the action with prejudice. The Tompkinses appeal.

## II. Discussion

### A. Scope of Review

Because the Tompkinses represent themselves, we afford their filings a liberal construction, but we cannot act as their advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). But even viewed with that solicitude, the bulk of the

6

Tompkinses's appellate brief[4] consists primarily of arguments about the merits of their claims or contentions of district-court error that relate to the merits of their claims. We discern no challenge to the district court's dismissal of claims four and five of their first amended complaint. They have therefore waived appellate review of those rulings. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (explaining that issue not raised in opening brief is waived). They have also waived appellate review of issues or arguments insufficiently raised in their opening brief. *See Becker v. Kroll*, 494 F.3d 904, 913 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived."). Under this standard, and by construing their brief *very* liberally, we discern only four sufficiently-raised assertions of error regarding the district court's dispositive rulings on the motions for summary judgment and leave to amend. After setting out our standard of review, we turn to those four assertions.

## B. Standard of Review

We review a district court's summary-judgment ruling de novo. *See Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014). We review a denial of leave to amend for abuse of discretion. *Id.* at 1012. But where, as here, a district court denies "leave to amend because it determined that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Id.* (internal quotation marks omitted). "A proposed amendment is futile if

---

[4] The Tompkinses filed only an opening appellate brief. They affirmatively waived filing a reply brief.

7

the complaint, as amended, would be subject to dismissal." *Id.* (internal quotation marks omitted).

## C. Analysis

<u>Assertion 1</u>. The Tompkinses assert they were deprived of discovery, which hampered their effort to oppose the motion for summary judgment. They claim that through discovery, they would have obtained "evidence of meetings, agreements, and contracts," and that interrogatories would have "provide[d] proof of additional damages." Aplt. Br. at 22. They have not explained, nor do we see, how this information was relevant to anything other than the merits of their claims that defendants acted improperly in the sale of GCC to Glorieta 2.0—claims that were dismissed on preclusion principles. Nor do they explain how information they might have obtained through discovery would have shown that the Purchase Offer, which the Tompkinses *refused*, was even a contract, let alone unconscionable. Finally, the district court granted summary judgment on their bid-rigging claim for a variety of alternative reasons, including (1) their failure to show that any supposed agreement affected competition rather than the Tompkinses alone, and (2) lack of standing because none of their allegations showed that defendants' alleged conspiracy harmed the relevant market as a whole rather than them individually. The Tompkinses have not explained, nor do we see, how discoverable information would have led to a different result on their bid-rigging claim. Assertion 1, therefore, is wholly without merit.

Assertion 2.  The Tompkinses contend that the district court erred in concluding that evidence concerning the financial condition of LifeWay and Glorieta 2.0 was immaterial to its summary-judgment ruling.  But the Tompkinses have not explained, nor do we see, how this evidence is material to the district court's rulings on issue preclusion, claim preclusion, or the failure to state a claim for an unconscionable contract or bid-rigging.  Assertion 2 is wholly without merit.

Assertion 3.  The Tompkinses argue that the district court's dismissal of their proposed bid-rigging claim was erroneously based on the notion that private parties cannot bring an antitrust suit.  But this was not a basis for the district court's ruling on the bid-rigging claim.  The Tompkinses appear to have interpreted the district court's discussion of a market-harm requirement, as both an element of an antitrust claim and as a standing requirement, to be a conclusion that private parties such as the Tompkinses cannot bring an antitrust claim.  In fact, the district court explicitly recognized that although the Tompkinses pleaded their bid-rigging claim under the Sherman Act, which does not provide a private right of action, they had a private right of action under a provision of the Clayton Act, 15 U.S.C. § 15(a).  *See* R., Vol. 7 at 42 n.9.  Assertion 3, therefore, wholly lacks merit.

Assertion 4.  The Tompkinses argue that the dismissal in *Tompkins I* was not a final judgment on the merits because some claims were dismissed for lack of jurisdiction or standing, and therefore claim preclusion is inapplicable.  This assertion wholly lacks merit.

The *Tompkins I* court dismissed the claims against defendants Weekley, Russo, and Looper based on lack of personal jurisdiction, which, as the district court in this case correctly explained to the Tompkinses, constituted a judgment on the merits of the jurisdictional issue. *See Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (explaining that "dismissals for lack of jurisdiction preclude relitigation of the issues determined in ruling on the jurisdiction question" (internal quotation marks omitted)); *Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) ("Although the dismissal for lack of personal jurisdiction in the [previous federal-court action] does not have res judicata effect, it does have collateral estoppel effect, preventing the relitigation of issues decided in the [previous action].").

The *Tompkins I* court also ruled that the Tompkinses lacked Article III standing to bring claims of corporate malfeasance against LifeWay and Glorieta 2.0. Because "standing is a jurisdictional mandate," *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006), *Tompkins I*'s standing ruling could be entitled to preclusive effect under the doctrine of issue preclusion, not claim preclusion, *see id.* at 1219 ("The preclusive effect [of a standing ruling] is one of *issue preclusion* (collateral estoppel) rather than *claim preclusion* (res judicata)."). But in determining that *Tompkins I* was a final judgment on the merits, the district court in this case did not rely on *Tompkins I*'s standing ruling. Instead, the district court looked to *Tompkins I*'s determination that the Tompkinses failed to state a claim for relief (1) on their claims against the individual defendants over which the court had

10

personal jurisdiction and (2) for breach of contract against LifeWay and Glorieta 2.0. The district court's conclusion about the finality of those rulings for purposes of claim preclusion was correct. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014) (explaining that for claim-preclusion purposes, a "dismissal for failure to plead a viable cause of action is a decision on the merits under [every] circuit's law").

### III. **Motion for Sanctions**

Defendants have filed a motion for sanctions under Fed. R. App. P. 38, arguing that this appeal is frivolous. They seek attorney fees, single or double costs, or both. Absent such an award, they ask for at least an admonishment that the Tompkinses refrain from filing another lawsuit asserting further claims against them based on the sale of the GCC or LifeWay's decision not to renew the Tompkinses' lease.

Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is frivolous "when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (internal quotation marks omitted). "[J]ust damages" includes attorney fees. *Id.* "The fact that [a party] is a pro se litigant does not prohibit the court from imposing sanctions." *Haworth v. Royal*, 347 F.3d 1189, 1192 (10th Cir. 2003).

11

The Tompkinses have responded to the motion for sanctions but offer no meritorious argument that their appeal was not frivolous. They contend that they have never received a judgment "on the merits" of their claims; instead, their claims have been "dismissed on legal technicalities." Aplt. Rebuttal to Mot. for Sanctions at 3. As we have discussed, the law is clear that dismissals for lack of personal jurisdiction and failure to state a claim for relief are judgments on the merits for issue- and claim-preclusion purposes, respectively.

The Tompkinses also assert that an order in *Tompkins I* and our decision in *Tompkins II* led them to reasonably believe they could refile their claims "with a new properly pled action representing only themselves as pro se litigants and not representing the rights of others." *Id.* at 5. But the *Tompkins I* order they rely on was one denying a motion to strike a third amended complaint as a sanction. The later, operative dismissal order in *Tompkins I*, which we affirmed in *Tompkins II*, concluded that the Tompkinses lacked standing to bring claims of corporate malfeasance against entities they had no stake in. Nothing in their amended complaint or proposed second amended complaint in this case suggested that their relationship to LifeWay or Glorieta 2.0 had changed such that they had gained standing.

Finally, the Tompkinses suggest that a court should not sanction pro se litigants under Rule 38 unless the court considers the "totality of the circumstances," including whether an appellant is pro se, *id.* at 7 (internal quotation marks omitted), and finds "objective and unquestionable frivolity," *id.* at 8 (internal quotation marks

12

omitted).  We decline to adopt these standards as a general rule, but we find they are met in this case.  In considering whether to grant sanctions under Rule 38, we have taken the Tompkinses' pro se status into account and conclude that it does not require us to deny the motion for sanctions.  And our view that this appeal has no arguable merit is the result of objective analysis that has led us to the conclusion that the appeal is unquestionably frivolous.

Having rejected the Tompkinses' arguments, we grant defendants' motion for sanctions pursuant to Rule 38.  We award defendants double costs contingent upon the filing of a verified motion for costs.  We also award defendants just damages arising from this appeal.  To facilitate our determination of just damages, defendants shall file a supplement to their motion for sanctions no later than fourteen days after the filing date of this order and judgment.  Defendants should describe in general terms the amount and nature of the legal fees they incurred in defending this appeal, including whether any legal fees or hours were discounted, but they need not provide an itemization of the tasks taken or the fees requested.  The Tompkinses may respond to the supplement no later than fourteen days after it is filed.  The court will take the supplement and any response to it under advisement and assess just damages by separate order.  In addition, we caution the Tompkinses that if they continue to file pro se actions or pleadings in federal court arising out of the same dispute, restrictions may be imposed on their ability to proceed pro se in the federal courts of this circuit.

13

## IV. **Conclusion**

The district court's orders are affirmed.  We grant defendants-appellees' motion for sanctions, and the parties shall proceed as instructed above.

Entered for the Court


Gregory A. Phillips
Circuit Judge